STATE EX REL. NORTHWESTERN NATIONAL BANK OF GREAT FALLS, RESPONDENT, *v.* DICKERMAN, COUNTY TREASURER, APPELLANT.

[Submitted June 4, 1895. Decided June 10, 1895.]

SCHOOLS—*Bonds of school district—Form of warrant.*—Section 1951, Fifth Division of the Compiled Statutes, provides that when bonds are issued by a school district, "they shall bear the signature of the chairman of the board of trustees, and shall be countersigned by the clerk," and when a warrant in such form is drawn by the board of trustees of a school district on the county treasurer, it is sufficient as to form.

FRAUD—*Pleading—Striking out answer.*—Where an answer alleges fraud, and contains other allegations which are absolutely contradictory of and inconsistent with the allegation of fraud, such allegations are properly stricken out.

SCHOOLS—*Liability of school district for loan on bonds.*—Although the trustees of a school district exceed their authority in contracting for a loan on bonds of the district, yet, if the money is advanced under the contract in good faith and is used for school purposes, the district is under a liability to refund the money so advanced and expended.

SAME—*Constitutional law—Retrospective legislation.*—Section 3, Article XIII, of the State Constitution, providing that all moneys borrowed by any municipality, or other subdivision of the state, "shall be used only for the purpose specified in the law authorizing the loan," is not violated by the Act of February 18, 1895, which provides that money loaned or advanced for school purposes on bonds of the district which are afterwards declared to be void by the supreme court of the state, may be repaid from the proceeds of the sale of subsequent bonds issued for school purposes. Nor is such

act retrospective in its operation, and therefore within the inhibition of section 13, article XV, of the constitution, providing that the legislature shall pass no law retrospective in its operation or which imposes upon the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past.

*Appeal from Eighth Judicial District, Cascade County.*

APPLICATION for writ of mandamus. The writ is granted by BENTON, J. Affirmed.

Statement of the case by the justice delivering the opinion.

This is a proceeding for a writ of *mandamus.* In its affidavit the relator alleges that it is the owner of the following warrant:

"No. 2,604. Great Falls, Mont., April 6th, 1895. The treasurer of Cascade county will pay fifteen thousand eight hundred thirty-three and 56-100 dollars to Northwestern National Bank, or order, for moneys advanced on H. S. Bldg., out of any moneys in the treasury to the credit of school district No. 1 building fund. $15,833.56. O. H. Holmes, Chairman of Trustees. A. E. Canfield, Clerk of Board of Trustees." It is alleged that it presented said warrant to the defendant, and demanded payment thereof; that said demand was refused; that, at the time of the presentation and demand of the payment of said warrant, the defendant had in his custody, as the treasurer of said county, ample funds available for the payment thereof.

The lower court issued an alternative writ of *mandamus* on the filing of the affidavit, requiring defendant to pay said warrant, or show cause for not doing so.

In his answer and return to said writ, defendant admits that he is the treasurer of said county; that the warrant was presented, and demand made for the payment thereof; and that he refused to pay the same. He also admits that he had sufficient funds in his hands belonging to said district to pay the same. He denies, however, that the warrant was drawn by the board of trustees of said school district. The answer then sets up at great length the history of the transactions between

the trustees of said school district and the relator herein in reference to the issuing of bonds by the trustees of said district for the purpose of building school houses, and purchasing land therefor in said district, and the advancement of money by relator to said trustees for said purpose on said bonds, as well as the conditional sale of said bonds to the relator by said trustees.

From this history it appears that in the year 1894 an election was had by the electors in said district upon the proposition to issue bonds in the sum of $80,000, for the purposes aforesaid. Bonds were issued in said amount, by said district, for said purposes. They were advertised for sale. Bids were made. These bids were all rejected. Thereafter the bonds were conditionally sold to the relator at private sale. The condition was that the relator was to take the bonds, provided the supreme court decided the bonds to be valid. At that time there was a doubt in the minds of the trustees and the relator as to the validity of these bonds. To determine this question, a suit was commenced by James T. Stanford, vice president of the relator, against the trustees of said district. See *State* v. *School Dist No. 1*, 15 Mont. 133, for the facts and results of said suit in this court. After said conditional sale of said bonds, and before the question of their validity had been determined by the courts, the relator and trustees entered into a contract whereby relator agreed to advance a sum of money to the trustees, not to exceed $20,000, for the purpose of building a school house in said district. While these transactions between relator and said trustees were taking place, the trustees had contracted with the McKay Brothers for the erection of a high school building in said district, at a cost of more than $50,000. Pursuant to the contract to advance money to said trustees for said purposes, the relator paid out the sum mentioned in the warrant in controversy on divers and sundry warrants drawn by the trustees for labor, material, etc., employed and used in the partial construction of said high school building. It is alleged that there were no funds in the treasury with which these several warrants could be paid, but that

they were assigned to the relator, and thereupon the relator furnished the funds to the treasurer to meet and pay them, in accordance with the contract aforesaid with relator to advance money to the trustees for such purpose.

It is alleged in the answer that all these transactions between the relator and the trustees, as well as the building contract with the McKay Brothers, were without authority of law and void, for the reason that there were no funds in the treasury at the time to meet and pay for the same. It is also alleged that the conditional private sale of the bonds to relator, and all the transactions set out in the answer, were void, and that relator had full knowledge thereof. It is alleged in the answer that on the 27th day of December, 1894, and after the date of the transactions aforesaid, an election was held in said school district upon the proposition to issue the bonds of said district in the amount of $90,000, for the purpose of building one or more school houses, etc.; that a majority of the qualified electors of said district voted in favor of issuing said bonds; that said bonds have been issued and sold by the trustees, and the money for the sale thereof has been paid to the defendant, but the defendant claims that this money is not available for the payment of the warrant in controversy.

The court below, on motion of relator, struck out all of defendant's answer, except the denial that the warrant in suit was issued by the board of trustees of said district.

After hearing proof as to the issuance of the warrant, the court entered judgment for the relator that a peremptory writ of *mandamus* issue, and for costs.

From this judgment the defendant appeals.

*Arthur J. Shores,* for Appellant.

1. The warrant was not in the form prescribed by statute. (Sections 763, 772, 1867, 1869, fifth division, Compiled Statutes; *Connor* v. *Morris*, 23 Cal. 447; 2 Cook on Stock and Stockholders, 3d Ed. § 716; *Chapman* v. *Limerick*, 56 Me. 390; *Saline Co.* v. *Wilson*, 61 Mo. 237.)

2.  Treasurer may rightfully refuse to pay a warrant not properly drawn, or drawn for an unauthorized purpose. Even if it were the legal duty of the treasurer to pay as contended by the respondent, it would not necessarily follow that upon his refusal to pay the Court would by *mandamus* compel payment. While it is true that the function of the writ is to compel performance on the part of the officer of a duty enjoined upon him by law, still the writ will not issue unless the right of the relator to the money is clear. (*Territory ex rel Tanner* v. *Potts,* 3 Mont. 367; *Chumasero* v. *Potts,* 2 Mont. 266; *Territory ex rel Largey* v. *Gilbert,* 1 Mont. 376; High on Extraordinary Legal Remedies, 2 Ed. §§ 9, 26; *Slavin* v. *Wendell,* 7 N. Y. 171; *Keller* v. *Hyde,* 20 Cal. 594; *Perry* v. *Ames,* 26 Cal. 372; *Ray* v. *Wilson,* (Fla.) 14 L. R. A. 778.)

3.  The transactions upon which the warrant issued did not create any debt or obligation on the part of the district. The board of trustees were not authorized to borrow money of the relator for the purpose of building a school house, and could not by such borrowing create an indebtedness upon the part of the district. (1 Dillon on Municipal Corporations, § 457; § 1885, fifth division, Compiled Statutes; *Zolman* v. *San Francisco,* 20 Cal. 102; *City of Shaska* v. *Hedmon,* 55 N. W. 737; *Kramrath* v. *City of Albany,* 28 N. E. 400; *McDonald* v. *Mayor,* 68 N. Y. 23; *Dickinson* v. *City of Poughkeepsie,* 75 N. Y. 74.) For full discussion of the principle see the following cases holding that where there is a lack of power upon the part of the corporation itself to enter into a contract, or where a manner of contracting directed by statute has not been pursued, there can be no recovery either upon the contract or upon *quantum meruit.* (*Goose River Bank* v. *Willow Lake School Tp.* (N. D.) 26 Am. St. Rep. 605; *Daly* v. *San Francisco,* 13 Pac. 321; *Parr* v. *Village of Greenbush,* 72 N. Y. 470; *Smith* v. *Newburg,* 77 N. Y. 130; *Liddy* v. *Long Island City,* 10 N. E. 156; *Brown* v. *School District,* 10 Atlantic 119; *People* v. *Gleason,* 25 N. E. 4; *Andrews & Co.* v. *Curtis,* 22 S. W. 72; *Capital Bank of St. Paul* v. *School*

*Dist.*, 48 N. W. 363; and many other cases hereinbelow cited on other points.) The received doctrine everywhere is that all persons dealing with the officers of public corporations must take notice of the extent of their powers. (*Thomas* v. *Richmond*, 12 Wall 349; *Liddy* v. *L. I. City*, 10 N. E. 156; *Durango* v. *Pennington*, 7 Pac. 14; *Newberry* v. *Fox*, 33 N. W. 333; *F. & M. Bank* v. *School District*, 42 N. W. 767; *Daly* v. *San Francisco*, 13 Pac. 321; *Smith* v. *Newberry*, 77 N. Y. 130; *City of Litchfield* v. *Ballou*, 5 S. C. 820; *Thomas* v. *Richmond*, 12 Wall 349.)

4.   The act of February 18, 1895, does not cover the case of relator because the relator's claim originated in a fraudulent and willful violation of law, and because relator's case is not described by the terms of the act.   Acts conferring special privileges upon or granting public property to private individuals are construed strictly against the grantees and in favor of the public. (Am. and Eng. Ency., Vol. 13 p. 497, and case cited.)   In *Edmonds* v. *Carmichael*, 3 Littell (Ky.) 472, the court says:—Speaking of the facts recited in the preamble of a private statute.—"Such a preamble is evidence that the facts were so represented to the legislature," and this language is quoted with approval by the same court in *May* v. *Frazee*, 4 Litt. (Ky.) 391.   The act is unconstitutional.   It is clearly within the inhibition of section 3, article XIII, and section 13 of article XV. of the Constitution. It provides that the school trustees "may" pay, etc.   This language must be regarded as imperative. (*Supervisors of Rock Island County* v. *United States*, 4 Wall 435; *Huston* v. *City of New York*, 9 N. Y. 162; *Bowen* v. *City of Minneapolis*, 47 Minn. 115.) A school district is a "municipal subdivision" of a state. (2 Bouvier's Law Dictionary, under "Municipal" and "Municipal Corporations.") The term is manifestly used in various places in our constitution to designate, not cities, but other public corporations created by the state for the discharge locally of certain government functions, or state duties.   For example:   Sec. 4, art. XII; sec. 6, art. XII; secs. 3, 4, art. XIII. (See, also: *St. Louis* v. *Shields*, 67 Mo. 247; *People*

v. *Salomon,* 51 Ill. 37; *Horton* v. *Mobile School Commissioners,* 43 Ala. 598; *School District No. 7* v. *Thompson,* 5 Minn. 227; *Dowlan* v. *County of Sibley,* 36 Minn. 430; *Curry* v. *District Township of Sioux City,* 17 N. W. 190; *Hotchkiss* v. *Plunkett,* 22 Atlantic 536; *Board of Directors* v. *Peterson,* 29 Pac. Rep. 995; *Maxson* v. *School District,* 31 Pac. Rep. 462; *School District* v. *Grimes,* 34 Pac. Rep. 836; *Pacific Mfg. Co.* v. *School District,* 33 Pac. Rep. 68; *Wadsworth* v. *School District,* 35 Pac. Rep. 371; *Trustees of Graded Schools* v. *Broadhurst,* 13 S. E. 780.)

*Lyter & Greene (B. P. Carpenter* of counsel) for Respondent.

1.   The warrant delivered by the board of school trustees to the Northwestern National Bank was a valid warrant "in legal form and fair on its face." It was signed by the chairman of the board, and countersigned by the clerk. The act of 1895 authorizes payment by the board as a unit, and an organized body. In such case the signature of the chairman is the signature of the board. A school district is a corporate body for the purpose of enforcing the provisions of the act of March 2d, 1883. (§ 1953, Fifth Division Compiled Statutes.)

2.   The treasurer wrongfully refused to pay the warrant. The warrant being in due and proper form, it became the duty of the treasurer to pay it. He admits having the money on hand. This is not a case where any fraud or irregularity has been alleged against the board of school trustees. Section 1908, as to purposes for which school moneys may be used, is part of the "Montana School Law," and applies only to county school moneys, and not to money voted to be raised for the building of school houses. The testimony clearly shows that the amount due to the Northwestern National Bank was properly audited by the school board, and a warrant therefor directed to be drawn and issued. By the act of February 18th, 1895, the school board was constituted the auditing body, and the simple duty of the treasurer was to pay the warrant. (*McFarland* v. *McCowen,* 33 Pac. 113.)

3.   The district court did not err in striking out part of defendant's answer.   Nothing whatever is set up in the answer showing any fraud on the part either of the school board or the bank in regard to the sale of the bonds, or the advancement of money on account thereof. The payment of the money by the bank to the county treasurer to enable that officer to honor the drafts of the board, was the same in effect as a payment to the board.   The school board did not act *ultra vires*, but entirely within the scope of its authority, in receiving an advancement upon the sale of the bonds.   It sought to comply with the statute in every respect.   If the money was advanced and received under mistake of fact or law there was a liability resting upon the district to repay it.   The board did not act in violation of any statute in making the building contract, issuing its warrants or receiving the advancement of money.   It is a general principle of law that the legislature may cure defects in any act or proceeding that it could have authorized, and thus validate the imperfect execution of a power.   Appellants authorities are not applicable to the facts of this case.   *City of Litchfield* v. *Ballou,* 114 U. S. 190, might apply to a case arising under § 6 of Article XIII of the constitution.   *Kramrath* v. *City of Albany,* 127 N. E. 581, holds that if no statute forbids the corporation from contracting, there is a liability on a *quantum mernit.*   Even if a contract were clearly *ultra vires* the legislature could validate it, although the corporation perhaps could not ratify it.   The case here presented is not that of the bold transgression of the limits of authority, but that of a public body faithfully endeavoring, by an attempted compliance with the letter of the statute, to execute the powers conferred, but failing perfectly to execute such powers through a misinterpretation of some statutory provision.   The school board did nothing except what it was authorized to do, if there had been no error in some intermediate step.   Its proceedings were not *ultra vires* in the ordinary acceptation of the term, if at all.   (*Miners' Ditch Co* v. *Zellerbach,* 37 Cal. 543.)   Where no injury has resulted such action cannot be void as against public policy.

4.   The act of 1895 is not in violation of section 3, Art. XIII of the state constitution, nor of section 13 of Art. XV.   In the latter section the words ''retrospective in its operation'' cover and include all that follows in the same section.   They include a retroactive law, or a law ''which imposes on the people of any county or municipal subdivision of the state a new liability in respect to transactions or considerations already passed.''   But if some meaning is to be given to the last clause of said section it can only be a limitation upon the meaning of '' a law retrospective in its operation,'' or the meaning of ''retrospective'' must be limited by said last clause.   A retrospective law is one which imposes a new liability.   The act of 1895 imposes no new liability—it effects only the remedy. The school trustees had a right to make this repayment without an enabling act.   There was certainly a full consideration received by the school district, and an obligation based upon equity to repay.   The constitutional provision does not prevent repayment in such a case, and the act of 1895 is not retrospective within the meaning of said section 13.   (*New Orleans* v. *Clark*, 95 U. S. 655; *Reed* v. *Plattsmouth*, 107 U. S. 575; *Louisiana* v. *Wood*, 102 U. S. 299; *Goshorn* v. *Purcell*, 11 Ohio N. S. 641; *State* v. *Richland*, 20 Ohio N. S. 369; *Fisher's Negroes* v. *Dobbs*, 6 Yerg. 119.)   The school district, notwithstanding the invalidity of the bonds, was and is liable in law to repay the money advanced by the bank.   (*Hitchcock* v. *Galveston*, 96 U. S. 350; *Morville* v. *American Tract Society*, 123 Mass. 129–137; *Chapman* v. *County of Douglass*, 107 U. S. 357; *Moore* v. *Mayor*, 73 N. Y. 246; *Argenti* v. *City of San Francisco*, 16 Cal. 256; 1 Beach on Public Corporations, §§ 226–227 and twenty cases there cited.)   The act of 1895 cannot be treated as a law for the benefit of anybody. It applies generally to persons and corporations.   It confers no favor or especial privilege, and makes no grant.   It provides simply for the promotion of justice, and applies to all who may come within the scope of its provisions.   Section 13 was intended to prevent the legislature from imposing upon a municipality a burden for the enrichment or advantage of a

particular individual or corporation when no previous liability existed.   It is immaterial whether or not a school district is a municipal subdivision of the state within the meaning of section 13 of Article XV, for it has already been shown that the act of 1895 is not retrospective within the meaning of said section 13 and also that it does not create a new liability.   A school district, however, is not a municipal subdivision of the state within the meaning of said section 13.   (*People* v. *Trustees*, 78 Ill. 136; Dillon on Municipal Corporations, (3rd Ed.,) § 22; *Eaton* v. *Supervisors*, 44 Wis. 489; 1 Beach on Public Corporations §§ 5, 6, 7, 8, et seq.)

PEMBERTON, C. J.—The appellant contends that the warrant in controversy is not in legal form.   This contention is based upon the fact that the warrant is signed by the chairman and clerk of the board of trustees of the school district in their official capacity, and not by all or a majority of the trustees.   It is not disputed that the trustees properly audited the claim for which this warrant was issued.   For the purpose of raising funds, and for the issuing and sale of bonds to raise funds for the building of school houses, etc., each school district is declared by the law of this state to be a body corporate.   (Comp. St. div. 5, § 1953.)   Throughout the school law the trustees are designated the "Board of School Trustees." Section 1951 provides that, when bonds are issued by a school district, "they shall bear the signature of the chairman of the board of trustees, and shall be countersigned by the clerk." From a consideration of the school law of the state, we are of opinion that the warrant is in such form as is contemplated in such cases.   We are unable to see that the defendant could have been in any way liable to injury by paying the warrant on account of the form thereof.

The appellant assigns as error the order of the court striking out those parts of his answer noted in the statement.   The portions of the answer stricken out set out with great particularity, and at great length, the entire history of the bonds in the sum of $80,000, issued by the trustees of the district,

the sale thereof to relator, as noted in the statement, the contract of the relator to advance money to the trustees for the purpose of building school houses, the contract with the builders for the erection of a school house, the drawing of warrants in payment for labor and material employed and used in the construction of said school house, the payment of said warrants by the treasurer with funds advanced by relator, the doubts that existed as to the validity of the bonds, the institution and result of the suit to test the validity thereof, and the issuing of new bonds by said district in the sum of $90,000 in lieu of those which were declared to be invalid. But in all this showing we are unable to discover any allegations of fact establishing or tending to establish bad faith or fraud on the part of the trustees and the relator in any of these transactions. There does not appear a single allegation in the answer stricken out that is inconsistent with good faith and fair dealing between the trustees and the relator.

It is true that defendant alleged in his answer, which was stricken out, on information and belief, that relator procured and induced the trustees to sell it these bonds at private sale, for the purpose of procuring them at a less price than other investors would have paid for the same if valid, for the purpose of defrauding the district. But this allegation, on information and belief, must be construed in the light of the other allegations in the pleadings. It is not denied that these bonds were first advertised for public sale; that the bids were all rejected, as shown by defendant's answer. It is further shown by the answer stricken out that relator, in its private bid for these bonds, agreed to take them at par, with an added premium of $6 833.33. These allegations of the answer are absolutely contradictory of and inconsistent with the allegation of fraud made therein on information and belief. We see no error in the action of the court in this regard.

The appellant contends that the school district did not become indebted to or liable to repay the relator the money advanced by it to pay warrants issued for the construction of a school building in said district under the contract entered into

with relator. This contention proceeds, and is sought to be maintained, upon the theory that the trustees had no authority in law to enter into such contract with relator; that said contract is for that reason void, and, being void, the relator is not entitled to recover the amount advanced thereunder.

The doctrine here contended for by appellant is fully discussed, and a great many authorities collected, in *Brown* v. *City of Atchison*, 39 Kan. 37, 17 Pac. 465. In this case the court says : "From the authorities we think the following principle may be educed : Where a contract has been entered into in good faith between a corporation, public or private, and an individual person, and the contract is void in whole or in part, because of a want of power on the part of the corporation to make it or enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed in whole or in part by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity towards the other party, by either rescinding the contract and placing the other party in *statu quo*, or by accounting to the other party for all benefits received for which no equivalent has been rendered in return; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit."

In Morawetz on Private Corporations (section 689) this doctrine is thus stated : "After a contract entered into by a corporation has been performed by either of the contracting parties, the fact that the making of the contract involved an unauthorized exercise of corporate power on the part of the company will not constitute a defense to an action brought by the party having performed the contract to recover compensation for a breach of the contract by the other party." In section 721 the same author says : "The general rule is that, if an agreement is legally void and unenforcable by reason of some

statutory or common-law prohibition, either party to the agreement who has received anything from the other party, and has failed to perform the agreement on his part, must account to the latter for what has been so received. Under these circumstances, the courts will grant relief irrespective of the invalid agreement, unless it involves some positive immorality, or there are other reasons of public policy why the courts should refuse to grant any relief in the case.''

In *Pimental* v. *San Francisco*, 21 Cal. 352, the city had received money from the unauthorized sale of land, and refused to refund the same. In speaking of the rights of the purchaser to recover money paid for said lands at said void sales, Mr. Chief Justice Field says : ''This alleged want of privity, as we understand it, amounts to this : That, inasmuch as the mayor and land committee had no authority to make the sale, they had no authority to pay the money which they received from the bidders into the treasury of the city, and therefore no obligation can be fastened from such unauthorized act upon the city. The position thus restricted in its statement is undoubtedly correct, but the facts of the case go beyond this statement. They show an appropriation of the proceeds, and the liability of the city arises from the use of the moneys or her refusal to refund them after their receipt. The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property, which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. (*Argenti* v. *San Francisco*, 16 Cal. 282.) The legal liability springs from the moral duty to make restitution; and we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics. Its command always is to do justice.'' From these authorities it seems clear that if, in making

the contract under discussion, the trustees exceeded their authority, still there was created thereby a liability to refund the money advanced by relator under and in pursuance of said contract. The most, we think, that can be said in this case, is that there was an imperfect or defective attempt to comply with the law on the part of the trustees in the issuing of the bonds of the district. They had the authority under the law to issue them for the purpose for which they were issued, but failed to give a sufficient notice of the purpose and conditions thereof in providing for the election to authorize their issuance. Nor is any bad faith or fraud alleged in the issuance of said bonds. If the bonds had been declared void, we think it could hardly be contended that the contract with relator to advance money on them as security, for the building of the school house, would have been considered void for want of authority in the trustees to make the same. And, besides, the contract, so far as relator is concerned, has been fully executed, and we think the doctrine of *ultra vires* can be invoked with less force here than in cases of executory contracts. The school district secured the benefit of relator's money, advanced in good faith; and we think it would be a most inequitable and unjust holding to say that the district assumed no liability on account thereof, and that relator is left without a remedy, under the circumstances of this case.

The appellant finally contends that the relator is not entitled to recover in the proceeding, under the provisions of an act of the legislature, entitled: "An act to authorize the board of school trustees of any school district of Montana to repay from the proceeds of the sale of bonds any money heretofore loaned or advanced to it for the erection of a school house or school houses in such school district," approved February 18, 1895. This act is as follows: "Whenever heretofore money has been loaned or advanced to the board of school trustees of any school district for the erection of a school house or school houses therein by any person or corporation, in reliance upon the proceeds of the sale of bonds for the payment of the same, the issuance of which bonds had been voted

for by a majority of the electors of such district, voting at an election held for the purpose of authorizing the issuance of the same for the erection of a school house or school houses, which said money has been used by such board of school trustees in the erection of a school house or school houses in such district, but which bonds when issued have been adjudged and held to be void or invalid by the supreme court of the state, the money so loaned or advanced may be repaid, together with interest thereon covering the period for which interest has not been paid at the rate specified in said bonds so held to be void; said payment to be made by the board of school trustees to the person or corporation who or which had loaned or advanced the same, from the proceeds of the sale of any bonds thereafter issued for the purpose of building one or more school houses in said district, or for any other school purpose."

The appellant insists that this law is in conflict with section 3, art. XIII, and section 13, art. XV of the constitution of the state.  Section 3, art. XIII, is as follows:  "All moneys borrowed by, or in behalf of the state, or any county, city, town, municipality, or other subdivision of the state, shall be used only for the purpose specified in the law authorizing the loan."  Section 13, art. XV, is as follows:  ' The legislative assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal subdivison of the state a new liability in respect to transactions or considerations already passed."  We think that it is clearly shown that the money advanced by relator was used "for the purpose specified in the law authorizing the loan," as required by section 3, art. XIII, of the constitution.  The law authorized the loan of money for the purpose of building a school house in the district.  The relator advanced the money for that purpose on the bonds conditionally sold to it by the trustees, and it is not disputed that the trustees used the money for that purpose only.

The appellant contends that the law of February 18, 1895,

is retrospective, and is therefore within the inhibition of section 13, art. XV, *supra*. We think this law did not impose upon the school district ''a new liability in respect to transactions or considerations already passed,'' such as is prohibited by this section of the constitution. We have already held that a liability existed on the part of the district to refund the money advanced by relator. This liability existed prior to the passage of the law under discussion. The law imposed no new liability or burden upon the district. The law was intended to give a remedy, if remedy were wanting before its enactment. We think the legislature had the power to enact the law, and that the law does not conflict with the constitution of the state.

In *New Orleans* v. *Clark*, 95 U. S. 644, a case involving the constitutionality of such legislation, the court says: ''The constitution of Louisiana of 1868, which provides that no retroactive law shall be passed, does not forbid such legislation. A law requiring a municipal corporation to pay a demand which is without legal obligation, but which is equitable and just in itself, being founded upon a valuable consideration received by the corporation, is not a retroactive law; no more than an appropriation act providing for the payment of a pre-existing claim. The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the state, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasion.'' See, also, *Read* v. *City of Plattsmouth*, 107 U. S. 568, 2 Sup. Ct. 208; *Louisiana* v. *Wood*, 102 U. S. 294.

We have carefully considered all the assignments of error presented in this case. We have been unable to discover any reason or law to support the contention of appellant that relator is without right or remedy in this case.

The judgment of the court is affirmed.

*Affirmed.*

DE WITT and HUNT, JJ.. concur.