## STATE ex rel. LAMBERT, Respondent, v. COAD, APPELLANT.

[No. 1,386.]

[Submitted July 3, 1899,   Decided July 12, 1899.]

23  131
23  171
23  173
23  131
26   33
26   36
23  131
28  364
28  366
23  131
30   86
23  131
41  295
41  549

*Mandamus—Issuance by Justices of Supreme Court—Board of County Commissioners—Contract—Lowest Bidder.*

1. If it is necessary (under Section 1961 of the Code of Civil Procedure of 1895) that two Justices of the Supreme Court should concur in the issuance of an alternative writ of mandamus, where the application is made to two Justices, and the order directing the clerk to issue the writ is signed by only one of them, the other concurring, the writ is properly issued.

2. Session Laws of 1897, page 48, Section 12, provided that the commissioners of B county should contract with the lowest responsible bidders for transcribing and indexing certain records. The board, without advertising for bids, or any notice of its intention to let a contract, entered into an agreement with relators, whereby they agreed to do the indexing at a stipulated wage per month. *Held,* that the contract was void for want of compliance with the law, in that the county commissioners disregarded its requirements, both in failing to let the contract to the lowest bidder and in severing the work to be done and letting it under separate contracts to different parties.

*Appeal from District Court, Broadwater County; F. K. Armstrong, Judge.*

APPLICATION for a writ of *mandamus* by George Lambert against B. S. Coad, as clerk and recorder of Broadwater county. From a judgment granting a peremptory writ, respondent appealed. Reversed.

### STATEMENT OF THE CASE.

Application for a writ of *mandamus* to compel the defendant, as clerk and recorder of Broadwater county, to permit relator to have access to the public records of said county for the purpose of indexing the same.

The material allegations of the affidavit are:   That relator is engaged in the business and work, as hereinafter set forth, of indexing certain of the public records of the property in said county of Broadwater.   That B. S. Coad, the defendant,

is, and at all times hereinafter mentioned was, the clerk and recorder of said county of Broadwater, duly elected, qualified and acting, and that it is his duty, as such officer, under the laws of this state, to have the custody of the public records of the property lying in said county, and to grant access to such records, under reasonable restrictions, to all persons authorized pursuant to law to perform public service or duties which require such access to be had. That by Section 12 of an act passed by the Fifth Legislative Assembly, approved February 9, 1897, creating the county of Broadwater, and providing for its organization and government, the board of commissioners thereof were empowered, and it was made their duty, to let a contract for the indexing of the records of the property lying in said county that were in said act required to be transcribed from the original records thereof. That on the 3d day of January, 1899, the said board, finding that those engaged in the work of indexing said records were unduly and unseasonably prolonging the work, and said employes being hired by the month, called a special session of the board to meet on the 11th day of January, 1899, for the purpose of discharging the employes then engaged in indexing the records, and employing affiant and one G. R. McDonald to do the work in their stead, they being the lowest responsible bidders. That said meeting was also called for the transaction of any other business that might come before the board. That the call for the meeting was published in the Townsend Star, a newspaper of general circulation in the county of Broadwater, for five days preceding the 11th day of January. That on that day the said board, by the authority of said Section 12 of the act creating Broadwater county, contracted with the relator and the said McDonald for the doing of the indexing aforesaid yet remaining undone. That said action of the board was evidenced by a resolution of the board passed on that day as follows: "In accordance with the provisions prescribed in the order which calls for the special session, it is ordered that Mr. Combs, Mr. Long and Mr. Depew, now engaged in indexing the county records, be discharged this af-

ternoon, and the clerk is instructed to settle the balance of
wages due them by issuing warrants for the same; also that
George Lambert is engaged as indexer, and G. R. McDonald
as assistant indexer, to do the remainder of the county index-
ing, unless otherwise ordered by the board.   George Lam-
bert's wages is fixed at $100 per month, and G. R. McDon-
ald's at $80 per month   The clerk is instructed to allow
George Lambert and G. R. McDonald free access to all books
necessary to the performance of their duties.   Said new em-
ployes are to take up their work on Thursday, the 12th inst.,
and conduct such work in the office of the county clerk."
That thereupon the relator and the said McDonald accepted
the terms of said resolution, and on the 12th day of January,
1899, pursuant to their engagement under the same, applied
to defendant, as clerk and recorder aforesaid, for access to the
records of said county of Broadwater for the purpose of doing
said indexing.   That said defendant, disregarding his duties
in the premises, then and there refused, and has ever since
refused, to permit relator to have access to said records for
the purposes named in the resolution, thereby depriving rela
tor of his rights in the premises, and preventing him from the
performance of his engagement, to his damage in the sum of
$1,000; and that relator has no other plain, speedy and ade-
quate remedy at law for the redress of the injury thus done
him by defendant.   The affidavit closes with a prayer that an
alternative writ of mandate issue commanding B. S. Coad,
defendant, to allow relator access to the records of Broad-
water county for the purpose of indexing the same, or to show
cause why he should not do so.

On February 7, 1899, on application to two of the justices
of this court, the clerk of the court was directed to issue the
alternative writ, but to make the same returnable before the
Honorable Frank K. Armstrong, judge of the Ninth judicial
district, at such time and place as he might fix for the hear-
ing.   The Honorable Frank K. Armstrong fixed the time for
the hearing of the same, and made it returnable before him at
the city of Bozeman, Mont., on the 18th day of February,

1899, at the hour of 10 in the forenoon.    Thereafter, on the 13th day of February, 1899, the defendant entered his appearance to said writ, and filed a motion to quash the same, alleging as grounds for his motion, among other things, which are not material to notice:    (1) That the writ was not issued by the supreme court, or a majority of the justices thereof, as provided by law, but by a single justice thereof; and (2) that relator's affidavit fails to state facts sufficient to entitle him to a writ of mandate.    On the 18th day of February this motion was heard by the said judge and overruled.    The defendant was then given until the 23d day of February, 1899, to file his answer, which was done on the 21st day of that month. Defendant therein denies all of the material allegations set forth in the affidavit, and then sets up various matters by way of affirmative defense, which we shall not notice beyond stating that upon the hearing had before said judge at chambers on the 13th day of March, 1899, they were, on motion, stricken out.    At the same time the said judge proceeded to hear the proofs, and after such hearing, entered judgment that a peremptory writ of mandate issue, directed to the defendant, commanding him to "allow the relator herein, George Lambert, and G. R. McDonald, to have access at reasonable hours to the public records of said Broadwater county for the purpose of indexing the same," and adjudging defendant to pay the costs of this proceeding.    From this judgment defendant has prosecuted his appeal to this court.

*Mr. E. H. Goodman* and *Messrs. Sanders & Sanders* for Appellant.

*Mr. J. E. Kanouse* and *Mr. E. A. Carleton*, for Respondent.

**MR. CHIEF JUSTICE BRANTLY,** after stating the case, delivered the opinion of the court.

1.    Counsel for appellant seriously urge in their brief that the motion to quash the writ should have been sustained on the first ground laid therein.    They insist that the conclusion

reached by this court in *State ex rel. Leech* v. *Board of Canvassers of Choteau Co.*, 13 Mont. 23, 31 Pac. 879, that an alternative writ of mandate may be issued by any one of the justices of the supreme court, is not now controlling for the reason that the Code of 1895 (Code of Civil Procedure, section 1961) expressly provides that two justices shall concur in issuing this kind of writ. This contention, however, is made upon a misapprehension of the facts touching the issuance of the original writ in this case. The order of February 7th, directing the clerk of this court to issue the writ, was signed by the chief justice only; but this was done after consultation with Mr. Justice Hunt, and he concurred in the order. It was not deemed necessary that both justices should sign it. It is therefore not necessary to notice this contention further. But we are not to be understood, from what is here said, as expressing any opinion as to whether the conclusion reached in *State ex rel. Leech* v. *Board of Canvassers of Choteau Co.*, *supra*, is now obsolete in view of the provisions of the section of the Code just mentioned. This question is left for future consideration, when it properly arises.

2. The second ground of the motion brings in question the power of the board of commissioners of Broadwater county under the act of the legislative assembly creating that county and providing for its government. The territory erected into this county consisted of portions of Jefferson and Meagher counties. The act, after creating the new county, and providing for its government until the next general election, provides for the transcribing and indexing of the records of property within its limits, as follows:

"The county commissioners of said county of Broadwater are empowered and it is hereby made their duty to contract with the lowest responsible bidder for transcribing and indexing all records of property lying and being within the limits of the county of Broadwater, which transcripts when compiled shall be compared with the original records by the county clerk of the county from whence they are respectively taken, and when correct shall be by him so certified under

his official seal, and thereafter the records so transcribed and certified to shall be received and admitted in evidence in all courts of law in this state, and be in all respects entitled to like faith and credit as said original records. The county clerks of Jefferson and Meagher counties shall receive for their services in comparing and certifying to the correctness of the copies of said records six ($6.00) dollars per day, respectively, while engaged in said labor, which amounts shall be paid by the county of Broadwater on the completion thereof.'' (Sess. Laws 1897 p. 48, sec. 12.)

We observe that the object of this section is to secure to the new county complete records of the instruments in any way affecting the title of property lying within its limits by means of authenticated copies from the original records of Jefferson and Meagher counties. It specifically provides that it is the duty of the commissioners to have these records transcribed and indexed. It leaves them no option in the matter. It provides how they shall be obtained, and the mode of their authentication. The design was thus to serve the convenience of citizens in the examination of titles, and in the production of evidence in their local courts. In order that the work might be done as cheaply as possible, it was made the duty of the board to let the whole matter of transcribing and indexing to the lowest responsible bidder. It was desired that the county should have the benefit of competition among those bidding for the work, and the fact that competition is provided for implies that the letting of the contract should be so conducted by the board that those caring to enter into the competition should have notice of the time and place the contract would be let. Evidently, also, it was intended that the price of the work should be a sum fixed in the contract, either by naming a lump sum, or by fixing a price per folio and entry, and that a time should be agreed upon on or before or within which the copied records would be in the hands of their own officers for the use of the citizens. The facts set forth in the affidavit show that the transcribed records were already in the hands of defendant, and that a con-

tract was made between the board and plaintiff and G. R. McDonald on the 11th day of January, 1899, by which the latter were to do the indexing at the rate of $100 and $80 per month, respectively.   In other words, the board, by that contract, hired these persons as indexer and assistant indexer at a fixed wage for such time as it would require to do the indexing.   There was no notice of the letting of such or any contract, and there was, therefore, no competition, such as the provision of the statute contemplates.   The question presented here, then, is: did the board, in hiring the plaintiff and McDonald to do the indexing, pursue their authority under the statute, and make a valid contract?   Under our statute a county is a body politic and corporate, and has such powers as are Conferred by the code and special statutes. (Political Code, section 4190.)   Its powers are exercised through a board of commissioners, and this board has jurisdiction and power, under such limitations and restrictions as are provided by law.   (Id. section 4230.)   A county is not, in a strict sense, a municipal corporation.   In the sense, however that its board of commissioners has no power other than is derivable expressly or by necessary implication from the provisions of the statute defining their powers, it comes within the rules and principles of law applicable to such corporations.   In either case the executive body of the municipality must pursue the authority vested in it by statute.   It is the general rule that, when the authorities of a municipality are required by statute to let contracts to the lowest bidder, a contract not so awarded is illegal.   (Tiedeman on Municipal Corporations, section 172.)   Bids need not be called for unless the statute requires it; but if notice, advertising, and similar preliminaries are required, a contract entered into without attention to these preliminaries will be held invalid. *Id.*; (*Zottman* v. *City and County of San Francisco*, 20 Cal. 97; *Nicolson Pavement Co.* v. *Painter*, 35 Cal. 699; *Maxwell* v. *Board of Supervisors*, 53 Cal. 389; *Carter* v. *Kalloch*, 56 Cal. 335; *Mappa* v. *City Council*, 61 Cal. 309; *Brady* v *Mayor, etc.*, 20 N. Y. 312; *McDonald* v. *Mayor, etc.*, 68 N.

Y. 23; *Dickinson* v. *City of Poughkeepsie* 75 N. Y. 65; *In re Manhattan R. Co.*, 102 N. Y. 301, 6 N. E. 590; *People ex rel. Coughlin* v. *Gleason*, 121 N. Y. 631, 25 N. E. 4; *Board of Commissioners* v. *Gillies*, 138 Ind. 667, 38 N. E. 40.) The same rule applies to the letting of contracts on behalf of the state; and, before a contract can become valid and binding upon the state, the statutory formalities must be complied with. (*State ex rel. Woodruff-Dunlap Printing Co.* v. *Cornell*, 52 Neb. 25, 71 N. W. 961; *Dement* v. *Rokker*, 126 Ill. 174, 19 N. E. 33.) In the latter case the court say: "Letting by contract to 'the lowest responsible bidder' necessarily implies equal opportunity to and freedom in all whose interests or inclinations might thus impel them to compete at the bidding. No one may be compelled to bid at such a letting, but there must be entire fairness and freedom in competition. * * * The manifest purpose in requiring the contract to be let to 'the lowest responsible bidder' is to protect the state against imposition and extortion." In *State ex rel. Woodruff-Dunlap Printing Co.* v. *Cornell*, *supra*, it was also held that where the statute provided that one part of the state printing should be let in one contract, and then proceeded to designate several other classes of work, each of which it directed to be let in another contract, it was not within the power of the printing board to sever any of the classes, and let the work to seperate bidders. The action on the part of the board in severing the work and letting it to different bidders was no more than an attempt to award the contract in a manner not allowed by law. In the case at bar the commissioners were not only not guided by the provisions of the statute, but they disregarded its plain provisions and requirements, both in failing to let the contract to the lowest bidder and in severing the werk to be done and letting it under seperate contracts to different parties. The county thus fails to get the benefit of the competition provived for in the statute, and the purpose of this provision is defeated.

The allegation in the affidavit that the plaintiff and McDonald were the lowest responsible bidders imports nothing, in

view of the other facts stated, from which it appears that they were hired at a fixed rate of wages per month.

Nor do we think the defendant is precluded from asserting the illegality of the action of the board in defense of his action in refusing plaintiff access to. the records for the purpose. of indexing them.    The board's action in letting the contract was simply void for want of compliance with the law.    Under the authorities cited, the execution of such a contract, or payment for work done under it, will be enjoined at the instance of a taxpayer, and, when *mandamus* is resorted to to compel recognition of it by the auditing officer whose duty it is to audit the accounts of the municipality and pay them, no relief will be granted.    The court below should have sustained the motion to quash on this ground, and dismissed the application.

In reaching the conclusions we have in this case we have not overlooked the general statute touching the transcribing of records for new counties when created by the legislature (Political Code, Sections 4166–4172, inclusive); nor have we overlooked the provision of our Constitution (Article V, Section 26) prohibiting special or local legislation.    No question has been raised here as. to the validity of Section 12, *supra*, upon which this application is based.    Neither the general provisions touching the transcribing of records cited, *supra*, nor Article V, Section 26, of the Constitution, have been referred to either in brief or argument by counsel on either side.    Indeed, the relator, in founding his claim upon Section 12, *supra*, asserts its validity, and we have not felt warranted, under these circumstances, in going into an investigation of its constitutionality.

The judgment of the court below in directing the peremptory writ to issue will be reversed, and the cause will .be remanded, with directions to dismiss the application.

*Reversed and remanded.*