MISSOULA STREET RAILWAY CO., APPELLANT, *v.* CITY OF MISSOULA, RESPONDENT.

(No. 3,220.)

(Submitted February 13. 1913.   Decided February 28, 1913.)

[130 Pac. 771.]

*Municipal Corporations—Contracts—Statutory Requirements— Disregard of—Invalidity—Equitable Estoppel—Inapplicability of Doctrine.*

Municipal Corporations—Contracts—Disregard of Statutory Requirements— Invalidity.
   1.   Under the limitation—exclusive and not directory in its nature— upon the power of cities to let contracts prescribed by section 3278, Revised Codes, to the effect that all contracts requiring the expenditure of a sum in excess of $250 must be let to the lowest responsible bidder, a contract entered into by a city with a street railway company, under the terms of which the latter was to be paid the cost

of removing and replacing its tracks on certain streets to enable the former to lay sewers, amounting to over $5,500, was void.

Same—Estoppel—Inapplicability of Doctrine.

2.  Plaintiff railway company, having been cognizant of the limitation placed by law upon the power of defendant city in the letting of contracts, was not in a position to claim recovery of the reasonable cost of the work performed by it in taking up and relaying its tracks as shown in paragraph 1, *supra*, under the doctrine of equitable estoppel applicable to dealings between natural persons and private corporations.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by the Missoula Street Railway Company against the City of Missoula. Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. W. M. Bickford, W. F. Wayne,* and *V. S. Kutchin,* for Appellant, submitted a brief; *Messrs. Bickford* and *Kutchin* argued the cause orally.

Can a municipal corporation make a binding contract to pay the actual costs of taking up and relaying a street-car track, when such taking up and relaying of the track is caused by the municipality's own act in building a sewer, and when the city is bound by the franchise previously granted appellant to remove and relay the same?

It will be conceded that "the police power, in so far as its exercise is essential to the health of the community, cannot be contracted away." (*New Orleans Gas Co.* v. *Drainage Commission of New Orleans,* 197 U. S. 453, 49 L. Ed. 831, 25 Sup. Ct. Rep. 471, and cases cited.) Section 5 of the franchise granted appellant by respondents expressly reserves to the city and persons, companies and corporations having authority from the city the right, upon notice, to take up appellant's tracks for the purpose of laying and replacing water-pipes, gas-pipes, electrical wires, telephone and fire-alarm wires, sewer-pipes or any purpose that may be deemed necessary by the city council, without permission from appellant or any liability for damages for any interruption of appellant's business; on condition, however, that the persons, companies or corporations removing appellant's

tracks shall relay the same. Appellant is unable to see in what essential manner the power of the city in the matter of laying its sewer or general control of its streets is limited or qualified by the above agreement; on the contrary, the provisions of the above enlarge the power of the city council, and authorize interference with the lines of the appellant for any purpose that the city may deem necessary. This clearly is a grant or reservation of a larger right than that inherent in the municipality under its police power, the police power being limited to acts which are both reasonable and necessary. (*Des Moines City Ry. Co. v. City of Des Moines*, 90 Iowa, 770, 26 L. R. A. 767, 58 N. W. 906; *Burg* v. *Chicago R. I. P. Ry. Co.*, 90 Iowa, 106, 48 Am. St. Rep. 419, 57 N. W. 680; *Weyl* v. *Chicago M. St. P. Ry. Co.*, 40 Minn. 350, 42 N. W. 24; *Evison* v. *Chicago St. P. M. Ry. Co.*, 45 Minn. 370, 11 L. R. A. 434, 48 N. W. 6; *White* v. *St. Louis & S. F. Ry. Co.*, 44 Mo. App. 450; *Pennsylvania Ry. Co.* v. *Jersey City*, 47 N. J. L. 286.) There is no question of relinquishing or contracting away an inherent right under the police power, but a simple question of an obligation to payment for services performed at respondent's request. "Public corporations, like individuals, are bound to act in good faith and deal justly. They cannot be allowed to enter into contracts involving others in expensive engagements; silently permit these contracts to be executed and then repudiate them. * * * " (*Sacramento County* v. *Southern Pac. Co.*, 127 Cal. 217, 59 Pac. 568, 825.)

Assuming, for the purpose of argument, that the contract contained in section 5 of the franchise be a grant in excess of the power of the municipality to make, it still constitutes a contract between appellant and respondent in such a sense that the respective parties thereto are bound thereby, and their mutual rights and liabilities are therein defined until it is terminated by some proper action of the municipality. (*Chicago, B. Q. Ry. Co* v. *Nebraska*, 170 U. S. 57, 42 L. Ed. 57, 948, 18 Sup. Ct. Rep. 513.)

We further submit that the respondents are estopped to deny their liability of contract as set up in appellant's complaint. In the case of *Schneider* v. *City of Menasha,* 118 Wis. 298, 99 Am. St. Rep. 996, 95 N. W. 94, the court held as follows: "If a contract be made by a corporation with a person, beyond the scope of its power, not, however, expressly prohibited by its charter or any law, if there be no bad faith in the matter in fact, and in and by the same property of such person passes into the possession of the corporation, and is actually used by it for legitimate corporate purposes, a cause of action will thereby accrue in favor of such person on equitable grounds to recover the value of such benefit, not exceeding that of the money or property acquired and used." (See, also, *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432, 73 Pac. 189.) Where a municipal corporation receives and retains substantial benefits under contract which it is authorized to make but which is void because irregularly executed, or which it is not prohibited from making by a positive prohibition, it is liable in an action brought to recover a reasonable value of the benefits received. (*Lincoln Land Co.* v. *Village of Grant,* 57 Neb. 70, 77 N. W. 349; *Kansas City* v. *Wyandotte Gas Co.,* 9 Kan. App. 325, 61 Pac. 317; *Higgins* v. *City of San Diego,* 118 Cal. 524, 45 Pac. 824, 50 Pac. 670; *McGonigale* v. *City of Defiance,* 140 Fed. 621.)

A demurrer will not lie to a complaint if it states a cause of action upon any theory. (*Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454.)

*Mr. Frank Woody,* for Respondent, submitted a brief and argued the cause orally.

The allegations in the first cause of action clearly show that the alleged contract was made with the mayor and members of the council individually, and not with the council as a body corporate, and is therefore void. (2 Dillon on Municipal Corporations, 5th ed., secs. 783, 788; 1 Abbott on Municipal Corporations, secs. 275, 276; *Haliburton* v. *Frankford,* 14 Mass. 214; *Butler* v. *Charlestown,* 7 Gray (Mass.), 12; *Paola & Fall River*

*Ry. Co.* v. *Commissioner,* 16 Kan. 302; *Williams* v. *Commissioners,* 28 Mont. 360, 72 Pac. 755; 7 Am. & Eng. Ency. of Law, 2d ed., 979.)

It further appears from the complaint that no attempt was made by the council to comply with the provisions of section 3278, Revised Codes. The allegations are in substance that the council ordered the tracks removed in order that sewers might be constructed, that the appellants objected to removing its tracks and that the mayor and members of the council thereupon agreed that if the appellant would remove its tracks and afterward relay them, the city could pay appellant the cost of so doing. The language used shows that no bids for removing and relaying the tracks were ever obtained from any person, and that when the alleged contract was made no specified prices were agreed upon other than the cost of taking up and relaying the tracks, whatever that cost might be. The mode of letting contracts by cities and towns when the amount involved exceeds $250 is exclusive, and must be pursued, or the contract will not bind the corporation. (2 Dillon on Municipal Corporations, 5th ed., secs. 783, 801; 1 Abbott on Municipal Corporations, sec. 262; *Lebcher* v. *Commissioners,* 9 Mont. 315, 23 Pac. 713; *Williams* v. *Commissioners,* 28 Mont. 360, 72 Pac. 755; *Parr* v. *Village of Greenbush,* 72 N. Y. 463; *McCoy* v. *Briant,* 53 Cal. 247; *Argenti* v. *San Francisco,* 16 Cal. 255; *McCracken* v. *San Francisco,* 16 Cal. 591; *State ex rel. Shaw* v. *Trenton,* 49 N. J. L. 339, 12 Atl. 902; *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249; *Bowditch* v. *Boston,* 168 Mass. 239, 46 N. E. 1026.)

One of the uses to which streets may be put is the construction of sewers and drains therein by the public authorities. (3 Dillon on Municipal Corporations, 5th ed., secs. 1148, 1154; 3 Abbott on Municipal Corporations, sec. 874.) Sewers are constructed by municipalities under the police power of the state, delegated to such municipalities by the state through legislative enactment. (*Chicago etc. Ry. Co.* v. *Janesville,* 137 Wis. 7, 118 N. W. 182; *Keese* v. *Denver,* 10 Colo. 112, 15 Pac. 825; *Wolff* v. *Denver,* 20 Colo. App. 135, 77 Pac. 364; *District of Columbia* v. *Brooke,*

214 U. S. 138, 53 L. Ed. 941, 29 Sup. Ct. Rep. 560; *Van Wagoner* v. *Paterson,* 67 N. J. L. 455, 51 Atl. 922; *New Orleans Gas Light Co.* v. *Drainage Com.,* 197 U. S. 453, 49 L. Ed. 831, 25 Sup. Ct. Rep. 471; *People ex rel. Electric Lines Co.* v. *Squire,* 145 U. S. 175, 36 L. Ed. 666, 12 Sup. Ct. Rep. 880; *Lake Roland Elevated Ry. Co.* v. *Baltimore,* 77 Md. 352, 20 L. R. A. 126, 26 Atl. 510.) ''The principle obtains that public authorities may disturb the tracks of a company using the highways for the purpose of making proper improvements, the construction of sewers, laying water mains, or the like, and that any charges or expense caused by these acts to the railroad company in the temporary displacement and replacement must be paid exclusively by the company.'' (3 Abbott on Municipal Corporations, sec. 856; *Louisville City Ry. Co.* v. *Louisville,* 8 Bush (Ky.), 415; *Kirby* v. *Citizens' Ry. Co.,* 48 Md. 168, 30 Am. Rep. 455; *Detroit* v. *Ft. Wayne etc. R. Co.,* 90 Mich. 646, 51 N. W. 688; *San Antonio* v. *San Antonio St. R. Co.,* 15 Tex. Civ. App. 1, 39 S. W. 136; *National Waterworks Co.* v. *Kansas City,* 28 Fed. 921; *Belfast Water Co.* v. *Belfast,* 92 Me. 52, 42 Atl. 235; *Rockland Water Co.* v. *Rockland,* 83 Me. 267, 22 Atl. 166; *People* v. *Geneva etc. Traction Co.,* 186 N. Y. 516, 78 N. E. 1109; *Scranton Gas & Water Co.* v. *Scranton,* 214 Pa. 586, 6 Ann. Cas. 388, 6 L. R. A., n. s., 1033, 64 Atl. 84; *New Orleans Gas Light Co.* v. *Drainage Com.,* 197 U. S. 453, 49 L. Ed. 831, 25 Sup. Ct. Rep. 471; *Columbus Gas Light Co.* v. *Columbus,* 50 Ohio St. 65, 40 Am. St. Rep. 648, 19 L. R. A. 510, 33 N. E. 292; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683, 29 L. Ed. 510, 6 Sup. Ct. Rep. 265; *State* v. *Murphy,* 170 U. S. 78; *Chicago etc. Ry. Co.* v. *Nebraska,* 170 U. S. 57, 42 L. Ed. 948, 18 Sup. Ct. Rep. 513; *Middlesex Ry. Co.* v. *Wakefield,* 103 Mass. 262; *State* v. *Corrigan etc. Ry. Co.,* 85 Mo. 263, 55 Am. Rep. 361.)

By including section 5 in the ordinance granting the franchise to plaintiff company, the council attempted not only to abrogate, surrender and alienate a part of its police power, but also to place an additional burden upon the taxpayers of the city, and in so doing exceeded its powers; its act was therefore *ultra*

*vires,* and section 5 is therefore void.   (1 Dillon on Municipal Corporations, sec. 245; 3 Abbott on Municipal Corporations, sec. 913; 3 Dillon on Municipal Corporations, secs. 1236, 1239, 1269; *State ex rel. City of St. Paul* v. *Minnesota Transfer Ry. Co.,* 80 Minn. 108, 50 L. R. A. 656, 83 N. W. 32; *Northern Pacific Ry. Co.* v. *State,* 208 U. S. 583, 52 L. Ed. 630, 28 Sup. Ct. Rep. 341; *Flynn* v. *Little Falls Elec. & Water Co.,* 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; *New York & N. E. R. Co.* v. *Bristol,* 151 U. S. 556, 38 L. Ed. 269, 14 Sup. Ct. Rep. 437; *Anderson* v. *Fuller,* 51 Fla. 380, 120 Am. St. Rep. 170, 6 L. R. A., n. s., 1026, 41 South. 684; *Missouri* v. *Murphy,* 170 U. S. 78, 42 L. Ed. 955, 18 Sup. Ct. Rep. 505; *Chicago B. & Q. Ry. Co.* v. *Nebraska,* 170 U. S. 57, 42 L. Ed. 948, 18 Sup. Ct. Rep. 513; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 43 L. Ed. 341, 19 Sup. Ct. Rep. 77; *West Port* v. *Mulholland,* 159 Mo. 86, 53 L. R. A. 442, 60 S. W. 77; *Columbus Gas Light etc. Co.* v. *Columbus,* 50 Ohio St. 65, 40 Am. St. Rep. 648, 19 L. R. A. 510, 33 N. E. 292; *Chicago* v. *Chicago Union Traction Co.,* 199 Ill. 569, 65 N. E. 243; *Kirby* v. *Citizens' Ry. Co.,* 48 Md. 168, 30 Am. Rep. 455.)

While some courts hold that where an application of the strict rule relative to *ultra vires* contracts of private corporations would result in injustice, a more liberal rule should be adopted, the courts almost uniformly hold that municipal corporations are never estopped from setting up the defense of *ultra vires.* (1 Abbott on Municipal Corporations, secs. 258, 259; 2 Dillon on Municipal Corporations, 5th ed., sec. 791; *State ex rel. R. M. F. Co.* v. *Toole,* 26 Mont. 22, 91 Am. St. Rep. 386, 55 L. R. A. 644, 66 Pac. 496; *State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092.)   The following decisions follow the rule laid down by the text-book writers: "One who performs labor and furnishes materials to a city under a void contract cannot recover on a *quantum meruit.*"   (*Keating* v. *City of Kansas,* 84 Mo. 415.)   "A public corporation cannot be sued for damages resulting from an act which is *ultra vires.*"   (*City of Chicago* v. *Turner,* 80 Ill. 419; *Field* v. *City of Des Moines,*

39 Iowa, 575, 218 Am. Rep. 46; *Wheeler* v. *Essex Public Road Board,* 39 N. J. L. 291.) "The city and county incurs no liability for work done under a void contract, nor is there any guaranty on the part of the city and county that the forms of law have been complied with because its officers without authority attempt to contract. Those dealing with the city must see to it that its agents have power to act." (*Daly* v. *San Francisco,* 72 Cal. 154, 13 Pac. 321; *Nashville* v. *Sutherland & Co.,* 92 Tenn. 335, 36 Am. St. Rep. 88, 19 L. R. A. 619, 21 S. W. 674; *Mealey* v. *City of Hagerstown,* 92 Md. 741, 48 Atl. 746; *Newbery* v. *Fox,* 37 Minn. 141, 5 Am. St. Rep. 830, 33 N. W. 333; *McDonald* v. *Mayor etc.,* 68 N. Y. 23, 23 Am. Rep. 144; *Heidleburg* v. *St. Francois Co.,* 100 Mo. 69, 12 S. W. 914; *State* v. *City of Pullman,* 23 Wash. 583, 83 Am. St. Rep. 836, 63 Pac. 265; *Beyer* v. *Town of Crandon,* 98 Wis. 306, 73 N. W. 771; *Willis* v. *Wyandotte Co.,* 86 Fed. 872, 30 C. C. A. 445; *Wiegel* v. *Pulaski Co.,* 61 Ark. 74, 32 S. W. 116; *Hampton* v. *Logan Co.,* 4 Idaho, 646, 43 Pac. 324; *Austin Mfg. Co.* v. *Smithfield Tp.,* 21 Ind. App. 609, 52 N. E. 1011.)

The complaint showing on its face that the contracts are *ultra vires,* demurrer will lie. (14 Am. & Eng. Ency. Pl. & Pr. 243; *Brown* v. *Board of Education,* 103 Cal. 531, 37 Pac. 503; *Mealey* v. *City of Hagerstown,* 92 Md. 741, 48 Atl. 746; *Bazille* v. *Board of Commrs.,* 71 Minn. 198, 73 N. W. 845; *Newbery* v. *Fox,* 37 Minn. 141, 5 Am. St. Rep. 830, 33 N. W. 333.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff to recover the sum of $5,507.13, alleged to be due from the defendant upon two express contracts, under the terms of which the defendant agreed to pay to plaintiff the cost of moving and relaying its tracks on two of defendant's streets. The complaint declares upon these contracts in separate counts. The court below sustained a general demurrer to each of them. Plaintiff having declined to amend, judgment was rendered dismissing the action. In all

essential particulars, the contracts are identical. The same objection is urged to both. A statement of the circumstances out of which the second grew will therefore be sufficient to present the question which it is necessary to examine and determine.

The fifth section of the franchise granted by the defendant to the plaintiff, and under which it constructed and is operating its railway, reserves to the defendant, and to persons, companies and corporations having authority from the defendant to use the streets, the right to take up the plaintiff's tracks and move the rails for the purpose of laying or repairing water and gas pipe, electric wires, sewer-pipe, *etc.*, or for any purpose that may be deemed necessary by the city council, without liability to the plaintiff for interruption of its business, "provided, however, that such work shall be done without any unnecessary delay, and that whenever the said rails or tracks are taken up or removed, the same shall, upon completion of said work, be relaid by the person, company or corporation taking up or removing the same, as soon as possible, and replaced in as good condition as the same were in prior to the taking up and removal thereof." During the year 1911 it became of public concern that a sewer be constructed by the defendant along Cedar street. This rendered it necessary that plaintiff's tracks be removed until the work could be completed. Thereupon "it was agreed by the defendant, acting through its mayor and city council, that, if plaintiff would remove its said track and line and replace the same and keep an account of the actual cost thereof and present a bill for same, the city would pay the cost of the removal and replacement of the tracks aforesaid." The plaintiff removed and replaced its tracks, expending in that behalf a total of $2,716.65. The plaintiff also removed and replaced its tracks on Higgins avenue to permit a line of sewer to be laid therein, at a total cost of $2,790.38. When bills for these amounts were presented to the council, payment was refused. The special ground of refusal does not appear; but the following are urged in justification of it: (1) That it was not competent for the city council, when it granted the franchise to plaintiff, to relieve it of the burden of the expense incident to the removal and re-

placement of its tracks whenever this became necessary in order to enable the city to install a sewer or to construct any other improvement along a street upon which the tracks had been laid, in that, by so doing, the city council undertook to abridge the police power of the city; and (2) that the contracts are void because it is apparent that they were entered into without observance by the city council of the requirements prescribed by the statute, and therefore no liability was cast by them upon the city.

Counsel for plaintiff contend: (1) That the franchise is a contract between the plaintiff and the city, and that, though it may be repudiated by the city at any time by legislative action, until this is done it is binding upon both parties; (2) that, since the contracts have been executed, the city is estopped to question its liability under them; and (3) that in any event the city will be required, upon the principle of equitable estoppel, to pay the reasonable value of the work.

For present purposes it may be conceded that the city council did not exceed its power by incorporating in the franchise the provision found in section 5 thereof. We incline to the view that it did not. The purpose of it was to adjust the mutual rights and obligations of the parties with reference to the expense which it was anticipated would be necessary for someone to bear when the city came to install its sewer system or otherwise to improve the streets, and to settle definitely all questions as to who should bear the loss incident to the interruption of plaintiff's business pending the installment of any improvement in course of construction. The adjustment of such questions, it would seem, has no direct connection with the safety and welfare of the public, but is connected rather with the fiscal policy of the city. So regarded, it does not fall within the governmental functions of the municipality, but rather within what are termed its private functions, in the exercise of which it is free to contract at its discretion; it not being prohibited from doing so by the law of its creation or the general law of the state. But be this as it may, if, in incorporating in the franchise the provision in question, the council exceeded its power,

the plaintiff has no claim against the city. From this point of view, the burden of expense and loss incident to the removal and replacement of its tracks and the interruption of its business must be borne by plaintiff. If the council did not exceed its power, the plaintiff still cannot recover on the contracts, because, assuming that they were entered into by the city in strict conformity with the law in other respects, they are void because they were let to the plaintiff in total disregard of the statute requiring such contracts to be let to the lowest responsible bidder.

Assuming that the plaintiff was freed, by the terms of the franchise, from any duty to remove and replace its tracks, when [1] they were removed by the city, the expense of the work required fell upon the city as a part of the expense of installing the lines of sewer. The plaintiff, in contracting to do this part of the work occupied the same relation to the city as any other person who might have contracted to do it. Section 3259 of the Revised Codes provides: "The city or town council has power: * * * (63) To make any and all contracts necessary to carry into effect the powers granted by this title and to provide for the manner of executing the same." Section 3278 declares: "All contracts for work, or for supplies, or material, for which must be paid a sum exceeding two hundred and fifty ($250) dollars, must be let to the lowest, responsible bidder, under such regulations as the council may prescribe. * * * " The mode of exercising the power granted by the former section is subject to the limitation prescribed by the latter. Some of the courts hold that such a limitation is directory; but by the great weight of authority it is held to be exclusive and to apply to all municipal bodies. It falls within the general rule that, when the legislature has prescribed the mode by which a given power is to be exercised by a municipality, this mode must be pursued. It is the measure of power on that subject; and any attempt to pursue any other mode fails to bind the municipality at all. Contracts entered into in disregard of the limitation are void. Similar provisions have frequently been examined by this court, with the result that the rule, as above stated, has

become firmly established as the rule of decision in this juris-
diction. (*Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac.
249; *Lebcher* v. *Board of Commrs.,* 9 Mont. 315, 23 Pac. 713;
*State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092; *Will-
iams* v. *Commissioners,* 28 Mont. 360, 72 Pac. 755; *McGillic*
v. *Corby,* 37 Mont. 249, 95 Pac. 1063, 17 L. R. A., n. s., 1263;
*Carlson* v. *City of Helena,* 39 Mont. 82, 17 Ann. Cas. 1233, 102
Pac. 39; *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286.)
Any further discussion of it would serve no useful purpose.
Tested by it, the contracts are void and cannot furnish the basis
of recovery.

In support of their last contention, counsel for plaintiff cite
several cases which, in effect, hold that it is only when the
subject matter of the contract is entirely outside of the scope
of the corporate powers, or the contract is clearly prohibited,
that the municipality will be permitted to escape liability; and
[2]   they insist that, notwithstanding the contracts in question
are void, the plaintiff upon equitable grounds ought to be per-
mitted to recover the reasonable value of such benefits as have
been received by the defendant.   As already observed, the com-
plaint declares upon the contracts according to their express
terms.   It is therefore doubtful whether its allegations are suffi-
cient to support a judgment for the reasonable value of the work
done.   But assuming that they are sufficient, still we do not
think the plaintiff entitled to recover.   The result of such a
holding would establish a rule which would abolish completely
all limitation upon the power of the council to bind the city,
and thus defeat the very purpose had in view by the legislature
in enacting the statute, *viz.,* to promote economy and to protect
the taxpayers from fraud and favoritism on the part of the
council or the officers of the city.   The equitable doctrine of es-
toppel can have no application to such a case.   In entering into
the contracts, the plaintiff was dealing with an artificial per-
son, a creature of the law, whose authority to contract is con-
ferred and limited by law.   The facts were all known to it.
There was no misrepresentation made to it.   It knew the extent
of the power of the council and how it must be exercised.   It

dealt with the council at its own peril.   (*Lebcher* v. *Board of Commissioners, supra; State ex rel. Stuewe* v. *Hindson,* 44 Mont. 429, 120 Pac. 485; *State ex rel. Lambert* v. *Coad, supra.*)   If, when it began to work, the contracts were illegal, it knew it. It did the work with full knowledge of this fact.   It was therefore not misled, and is not now in a position to allege that the defendant is estopped to question its own liability.

In *Zottman* v. *San Francisco,* 20 Cal. 96, 81 Am. Dec. 96, in considering the question involved here, Mr. Justice Field said: "To the application of the doctrine of liability upon an implied contract, where work is performed by one, the benefit of which is received by another, there must not only be no restrictions imposed by the law upon the party sought to be charged against making, in direct terms, a similar contract to that which is implied, but the party must also be in a situation where he is entirely free to elect whether he will or will not accept of the work, and where such election will or may influence the conduct of the other party with reference to the work itself.   The mere retention and use of the benefit resulting from the work, where no such power or freedom of election exists, or where the election cannot influence the conduct of the other party with reference to the work performed, does not constitute such evidence of acceptance that the law will imply therefrom a promise of payment."   We are aware that in subsequent cases the supreme court of California has apparently departed to some extent, if not entirely, from the rule applied in this case, notably in *Sacramento County* v. *Southern Pac. Co.,* 127 Cal. 217, 59 Pac. 568, 825, *City of San Diego* v. *Higgins,* 115 Cal. 170, 46 Pac. 923, and *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432, 73 Pac. 189. In these cases the court applied to the contracts of a municipality the principle of estoppel under the rules which are applicable to contracts between natural persons and private corporations, but, as was remarked by Chief Justice Beatty in his dissenting opinion in *Sacramento County* v. *Southern Pac. Co.:* "This doctrine sweeps away at once all limitations upon the power of the board, for it can readily be seen that the contractor

must always have it in his power to commence work just as soon as he has induced the board to enter into a contract in defiance of the regulations intended to govern their action; and it is also apparent that the board, which desires to make contracts in disregard of the law, will have the same motive to allow the commencement of work that they have to enter into the illegal contract.'' These cases are distinguished in their facts from the case at bar; but the rule contended for by plaintiff's counsel is recognized in all of them.

It may well be said that, in cases in which the municipality has acquired property which is still in specie, it may not be allowed to retain it and at the same time refuse to pay its reasonable value. In such a case, however, its liability would rest upon different principles. The contract being void, the title to the property would not vest under it, and the seller would be in a position to reclaim it, or, if restoration of it should be refused, to recover the reasonable value of it. But even in such a case the liability would not arise out of the contract. The rule declared in the *Zottman Case* was expressly recognized by this court in *State ex rel. Lambert* v. *Coad, supra,* in announcing the following conclusion: ''Nor do we think the defendant is precluded from asserting the illegality of the action of the board in defense of his action in refusing plaintiff access to the records for the purpose of indexing them. The board's action in letting the contract was simply void for want of compliance with the law. Under the authorities cited, the execution of such a contract, or payment for work done under it, will be enjoined at the instance of a taxpayer; and when *mandamus* is resorted to to compel recognition of it by the auditing officer, whose duty it is to audit the accounts of the municipality and pay them, no relief will be granted.''

For these reasons, we think the action of the court in sustaining the demurrer was correct. The judgment is accordingly affirmed.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Sanner concur.