STATE OF MONTANA exrel. GREAT FALLS MR. KLEAN, a Corporation, Organized and Existing under the Laws of the State of Montana, Relator, v. MONTANA STATE BOARD OF EXAMINERS, Governor Forrest H. Anderson, Secretary of State Frank Murray and Attorney General Robert L. Woodahl, as members thereof and H. F. WEGGEMAN, as Acting State Controller, ex officio, State Purchasing Agent, Respondents.

No. 11680.
Submitted May 26, 1969.
Decided June 24, 1969.
456 P.2d 278.

Dzivi & Conklin, James W. Johnson (argued), Richard Dzivi (argued), Great Falls, for relator.

Robert Woodahl, Atty. Gen., Douglas J. Wold (argued), Helena, for respondents.

Donald A. Garrity (argued), Helena, amicus curiae.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Whether it is necessary for the State to award the contract to provide janitorial and maintenance services and supplies for the Capitol complex by competitive bidding is the issue. We accepted original jurisdiction.

Relator, Great Falls Mr. Klean, brought the proceeding to compel the respondent state board of examiners to rescind its action authorizing the state controller to award a contract for janitorial and maintenance service to Creek's Building Maintenance without competitive bidding, and further to compel the State to call for bids and provide relator and other interested parties with bid forms and specifications and for the awarding of bids to the lowest responsible bidder.

After our order to show cause, a return to the order was filed. We also allowed briefs and argument of amicus curiae. No fact problems or implications of any kind are involved—only that involving statutory interpretation.

The Montana statutes relevant to the issue include:

"82-3309. *Custodial care of capitol buildings and grounds,* (1) It is the duty of the state controller to supervise and direct the work of caring for and maintaining buildings, equipment and grounds in the capitol area. The controller shall include in the department's budget the necessary requests for appropriations for the maintenance, repair, replacement, renewal, or addition to state buildings, equipment and grounds in the capitol area. (2)* * * "

"82-1901. *Creation of state purchasing department and agent,* There is hereby created * * * a department to be known as the state purchasing department. Said department shall be in charge of a state officer to be known as the state

purchasing agent. * * * the state controller shall be ex officio the state purchasing agent * * *."

"82-1902. *Duties of state purchasing agent.* The state purchasing agent shall, under the restrictions of this act, have full and sole power and authority and it shall be his duty to contract for and purchase * * * all supplies of whatever nature necessary for the proper transaction of the business of each and every state department, commission, board, institution, or official. For the purpose of making such purchases and contracts the state purchasing agent shall be and is hereby made the purchasing agent of and for each and every state department, commission, board, institution and official."

"82-1906. *Contracts for printing and supplies.* The state purchasing agent shall have exclusive power to contract for all printing and to purchase, sell, or otherwise dispose of * * * all materials and supplies, service, equipment, and other physical property of every kind, required by any state institution or by any department of the state government; * * * and also to furnish, repair, and maintain the executive residence for the governor * * *."

"82-1913. *Advertising for bids required—low bidder to receive contract.* The state purchasing agent in making purchase of supplies and equipment under the provisions of this act, or under the laws of the state of Montana must advertise as hereinafter provided, and award contracts in the name of the state of Montana for such supplies and equipment to the lowest responsible bidder, except as hereinafter provided."

"82-1915. *Contracts for supplies of state agencies.* Unless otherwise provided by law, the state purchasing agent shall have exclusive power, subject to the consent and approval of the governor, to let to the lowest bidders and enter into contracts with the lowest bidders, for the furnishing of all supplies, stationery, paper, fuel, water, lights, and other articles required by the legislative assembly and all other offices, departments, boards, commissions and institutions of the state.

"Before any such contract is let, the state purchasing agent must advertise in such manner and for such time as in this act provided for sealed proposals for all such supplies or services mentioned in this section."

"82-1918. *Contracts limited to one year.* No contracts shall be made for a longer period than one year and such contract shall provide for the delivery of such articles at such times and in such quantities as the purchasing agent may determine."

"82-1924. *State contracts to be awarded to lowest responsible resident bidder.* In order to provide for an orderly administration of the business of the state of Montana in awarding contracts for materials, supplies, equipment, construction, repair and public works of all kinds, it shall be the duty of each board, commission, officer or individual charged by law with the responsibility for the execution of the contract on behalf of the state, board, commission, * * * to award such contract to the lowest responsible bidder who is a resident of the state of Montana. * * *"

On May 8 and 15, 1969, relator sought bid forms and specifications so that it could bid for the performance of janitorial services for the state Capitol. It can be said that the relator's request was ignored, and the state board approved the granting of a new contract continuing the janitorial service contract of Creek's Building Maintenance.

Creek's Building Maintenance had originally bid in 1963 on conditions and specifications for the janitorial service contract. It was awarded the contract. The contract specified a 365 day period and was considered renewed for 365 day periods until cancelled by the parties, the cancellation being by 30 day written notice. Every year since 1963, without bids, the contract has been renewed. The date of the contract was July 1 each year. Heretofore no other competitor appeared to either bid or request consideration to bid until May of 1969.

By letter of May 19, 1969 the state controller advised the board of the requests of relator to bid and sought the advice of

the board. In that letter the controller recommended that: "It appears that due to the size and complexity of the contract, and the fact that the services provided under the contract were found to be satisfactory, * * * a decision has been made to continue the current contract. * * *"

The board approved. However, before the contract was formally entered into this action was commenced.

Additionally, in the way of background, an attorney general's opinion in 1963 only a few weeks prior to the original contract, 30 Op. of Atty. Gen., No. 5, May 22, 1963, stated:

"You have advised me that you intend to engage an independent contractor to provide the janitorial and maintenance services in the Capitol complex. You wish to know if it will be necessary to award this contract by competitive bidding.

"There is no question that the subject of the proposed contract is services. While some supplies are involved, i. e., furnishing soap and towels for washrooms, the contract is primarily one for the service of keeping state buildings clean. You ask if this is the type of service which may be purchased without competitive bidding.

"In Opinion No. 49, of Volume 29, Report and Official Opinions of the Attorney General, I advised you that contracts for the preparation and service of meals need not be awarded by competitive bidding. The rationale of that opinion was that the preparation of food involved special skills which could not be measured by a monetary yardstick. It is the general rule that contracts for professional services and other services requiring special skill and training are not required to be let on bids. See 142 A.L.R. 542; 92 A.L.R. 837; 44 A.L.R. 1150; and 43 Am.Jur., Public Works and Contracts, Sec. 28.

"However, where the service contracted for does not involve the exercise of special skills, training, taste or discretion, it would seem that the general policy of our statutes requiring competitive bidding for 'public works' (Section 82-1924, R.C.M. 1947) should control. Knights of the Iron Horse v. Detroit, 300

Mich. 46 7, 2 N.W.2d 466. Since the work to be performed under the contract is not characterized by the employment therein of specialized, technical or artistic skills, nor are any such skills necessary to achieve standards of service reasonably to be expected, it should not be exempt from the general legislative policy that the interests of the State are best served by awarding contracts through competitive bidding.

"The distinction I have drawn can be simply illustrated. Under our statutes and the law generally, competitive bidding is not required before hiring an artist to paint a mural. It is required to hire a painter to paint a wall.

"It is therefore my opinion that the proposed contract for janitorial services must be awarded by competitive bidding."

In Holtz v. Babcock, 143 Mont. 341, 369, 389 P.2d 869, 883, 390 P.2d 801, this Court dwelt at length with a discussion of the law relative to competitive bidding. We said:

"While it is readily apparent that there exists in our statutes variations in the descriptions of the articles to be purchased by the state purchasing agent it appears to us that it was clearly the intent of the Legislature in providing for a state purchasing agent and defining his duties to *include supplies, materials, service,* equipment, tools, and all physical property of every kind required by all offices, departments, boards, commissions and institutions of the State of Montana. He has the sole purchasing power, to be exercised in the manner provided by law." (Emphasis supplied.)

In the Holtz case we were discussing Title 82, R.C.M.1947, as that title applied. We did not discuss specifically section 82-1924 which was discussed in the attorney general's opinion of 1963 as evidencing a general legislative policy that state contracts be awarded by competitive bidding. In this regard, Amicus Curiae argues that the purpose of section 82-1924 as enacted in 1961 as chapter 183, Laws of 1961, was to provide Montana residents with a two percent preference when bidding and not to provide substantive guidelines on what contracts must be

let .by competitive bidding. See section 82-1924, R.C.M.1947, quoted above.

Certainly it can be said that one of the purposes of section 82-1924 was to provide a preference, but it can also be said, and we so hold, that it reflects an overall intention to include a general policy of requiring competitive bidding on services in connection with public works when viewed in conjunction with the balance of Title 82.

Relator also makes the point that the contract provides the contractor must provide ''supplies'' as well as services and they are clearly required to be competitively bid under 82-1915 and 82-1917. The relator goes on to argue that the contract is not divisible.

It is clear and everyone concedes that Creek's has done a good job. The respondents argue, conceding that ordinary janitorial services are not truly skilled and thus exempt from bidding, that the managerial aspects of the contract are such as to remove it under the general law. (See case authority listed in 15 A.L.R.3rd, § 2, p. 735). Figures purporting to prove that Creek's contract has saved money over what is termed the ''old system'' have been shown by exhibits of the annual cost. This may be so, but nothing is shown that another qualified bidder could not render better service at a lower cost. This is the purpose of specifications and competitive bidding. (See State ex rel. Lambert v. Coad, 23 Mont. 131, 138, 57 P. 1092.)

The respondent board in its presentation also suggested that ''security'' reasons indicated special considerations to take the contract out of bidding requirements. But no showing is made that any ''qualified'' bidder would provide any less security and the statutes require the controller to supervise and control.

We note too that section 82-1924 relates to ''public works of all kinds''. That this would cover maintenance and janitorial services needs no justification. The language is clear.

Accordingly, the respondent board and the state controller are responsible to provide relator and other interested parties

with specifications and bid forms for the janitorial and mainte-
nance service and supply contract for the capitol complex and to
receive bids if it chooses, as it has indicated, the route of con-
tracting with independent contractors for service and supplies.

We have not discussed the technical legal aspects of a writ of
mandamus nor have the parties. We treat, as did the parties,
this original proceeding as one for declaratory judgment in
interpreting the meaning of legislative enactments. Accordingly,
let this opinion be for the direction and guidance of the parties
concerned.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR.
JUSTICES JOHN C. HARRISON, HASWELL and BONNER,
concur.