HICKS, Appellant, *v.* STILLWATER COUNTY, Respondent.

(No. 6,364.)

HICKS, Respondent, *v.* STILLWATER COUNTY, Appellant.

(No. 6,371.)

(Submitted January 10, 1929.  Decided January 26, 1929.)

[274 Pac. 296.]

*Mr. M. L. Parcells,* for Appellant in cause No. 6364, and for Respondent in cause No. 6371, submitted a brief in each, and argued the causes orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In October, 1927, Clarence Hicks, Jr., brought action against Stillwater County on two alleged causes of action. His complaint alleges, as to each thereof, that at all times mentioned therein the defendant was a municipal corporation or subdivision of the state, and that plaintiff was the duly elected, qualified, and acting county surveyor thereof.

As a first cause of action, the complaint alleges that, in order to perform the duties imposed upon plaintiff, "it was and is necessary that he be provided * * * with a surveyor's instrument or transit," which defendant failed and neglected to provide and which plaintiff was compelled to and did "procure and use" during the time mentioned, "which fact was known to and acquiesced in" by defendant and its county commissioners; that the reasonable value of the use of the instrument, for said period was $175, no part of which has been paid, and the whole thereof is due and owing to plaintiff from defendant; that a claim therefor was duly presented to the commissioners and by them disallowed, and that the said sum constitutes a legitimate charge against defendant "which received full value therefor."

The allegations as to the second cause of action are: That during the years 1922 to 1926, inclusive, plaintiff performed services in the line of his duties, aggregating 1,396½ days' work, for which he was entitled to compensation at the rate of $8 per day, but that through "mutual mistake, error and inadvertence" claims were presented and allowed at the rate of $7 per day, the defendant "retaining and holding the balance of $1,396.50, which sum is the property of and belongs to plaintiff." It is then alleged that on October 3, 1927, or within one year after the last deduction, plaintiff presented his verified claim to the commissioners, which claim was disallowed; that the time mentioned was actually and in good faith devoted to the performance of plaintiff's duties and the county received full value therefor, and the amount claimed is now "held in trust for plaintiff."

The defendant county interposed a general demurrer to each of the alleged causes of action. On submission, the court overruled the demurrer as to the first cause of action, and sustained it as to the second. Each party elected to stand upon the pleadings, and thereafter judgment was duly entered in favor of plaintiff and against defendant on the first cause

of action, and judgment of dismissal was duly entered in favor of defendant as to the second cause of action.

The county appealed from the judgment, and the attorney general, appearing in its behalf, in his brief states that, as he advised the county surveyor originally that, in his opinion, the claim made the basis of the second cause of action was valid, the office cannot in good faith take any action respecting the second judgment.

Plaintiff appealed from the judgment of dismissal, and the county attorney of Stillwater County appeared in support of the judgment. The two appeals will be disposed of herein. Error is assigned on each appeal on the court's action on the demurrer and the consequent entry of judgment.

1. The position taken by the attorney general as to the first cause of action alleged is that the county surveyor had no authority to bind the county, in the first instance, for the rental of a transit, without the order or approval of the board of county commissioners first had and obtained; that the allegation that the transit was procured and used with the knowledge and acquiescence of the board "is far from the equivalent of saying that the board approved of charging the county $175, or any other sum, for the use of the instrument," and further that, by the express terms of section 4604, Revised Codes of 1921, plaintiff was precluded from presenting a claim against the county for anything except his own services as a county official.

The authority for the first declaration is found in section 4836, Revised Codes of 1921, but the phrase relied upon is used only in connection with the declaration that the surveyor shall work under the direction of the county commissioners in performing the duties imposed upon him with reference to establishing and laying out highways and overseeing the work thereon. However, the board of county commissioners has general supervision and control over the officers, affairs, and finances of its county (section 4465, Rev. Codes 1921, as amended by Chapter 95, Laws of 1923; *Williams* v. *Commis-*

*sioners*, 28 Mont. 360, 72 Pac. 755), and it may be conceded that, unless authority therefor shall be found in the statutes, no other county officer may bind the county by contract, and that a person dealing with a county through one of its agents is bound to know the extent of such agent's authority, and, if he enters into an unauthorized contract, he does so at his own risk. (*Pue* v. *Lewis and Clark County*, 75 Mont. 207, 243 Pac. 573.)

Nevertheless, the law requires a county to furnish its county surveyor with "necessary equipment, to perform his various duties as prescribed by law" (section 4838, Rev. Codes 1921), and this duty is to be discharged by the board of county commissioners. The complaint alleges that a transit was necessary for this purpose, and this is undoubtedly true, as the surveyor is required by section 4836 above to "make all surveys, establish all grades," etc., on county projects. The members of the board of county commissioners would not be presumed to have the technical knowledge necessary for the proper selection of a transit, and might reasonably leave the selection to the surveyor; nor is there anything in the law prohibiting the rental, rather than the purchase, of equipment which the county is required to furnish, or prohibiting an agreement in advance that the surveyor should "procure and use" necessary equipment for the benefit of the county, rather than putting the county to the expense of purchasing such equipment. Such an arrangement would imply a promise on the part of the county to pay the reasonable value of the use of the equipment.

"It is well settled that, in a proper case, a municipal corporation may be liable on an implied, as distinguished from an express, contract, although mere benefits received ✲ ✲ ✲ will not ordinarily create an implied promise to pay. Thus if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an

implied contract where it has received benefits, either in the entire absence of any contract or where an express contract is invalid because of mere irregularities." (3 McQuillin on Municipal Corporations, sec. 1364.) Thus it is held that, where it is charged that a city accepted and used equipment for fighting fire, "the facts so charged being admitted, render the defendant liable upon a *quantum meruit*," and demurrer to the complaint should be overruled. (*Leonard* v. *Long Island City*, 65 Hun, 621, 20 N. Y. Supp. 26.)

In *Morse* v. *Granite County*, 19 Mont. 450, 48 Pac. 745, it appears that one Cain, a county commissioner, sold property to the county in violation of the provisions of section 1110, Compiled Statutes of 1887, Fifth Division; the property was necessary equipment of a courthouse; the contract was thereafter held null and void, and then the commissioner sold the property to plaintiff, whose claim therefor was disallowed. This court said: "The district court held the contract * * * void, because prohibited by statute. This left the title to the property * . * * in Cain. The court did not and could not, by such adjudication, confiscate Cain's property. If, after such adjudication * * * the county kept possession of the property, and appropriated it to its use, it could not avoid paying the reasonable value thereof, because the contract by which it obtained it was *ultra vires*, illegal, and void. This question is fully discussed * * * in *State ex rel.*, etc., v. *Dickerman*, 16 Mont. 278, 40 Pac. 698." In the *Dickerman Case* this court said: "The legal liability springs from the moral duty to make restitution; and we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics. Its command always is to do justice."

It may be reasonably assumed from the allegations of the complaint that, on taking office, plaintiff, with the knowledge and acquiescence of the board of county commissioners, and in order to relieve the county of the expense of purchasing

for him a transit, used an instrument which he then had, or purchased and used such an instrument, throughout his four years of service. The use of the instrument, the wear and tear thereon, is "property," and in such a situation the defendant knowingly took and consumed property of the plaintiff, for which it should, in justice and under the above rules, pay the reasonable value, which is alleged and admitted to be the sum of $175.

Nor do we think that the provisions of section 4604, relied upon prohibited the plaintiff from presenting his claim for the reasonable rental of the instrument procured and used by him. That section provides that "no county officer must, except for his own service, present any claim, account, or demand for allowance against the county, nor in any way advocate the relief asked on the claim or demand made by another." The section is not intended to preclude a county officer from presenting a valid claim which he may have against the county, other than for "his own service," but merely to bar him from abusing his advantageous position by the championing of claims of third parties.

By sections 1632 and 1639, Revised Codes of 1921, the county surveyor is to be allowed "actual expenses" and "traveling expenses," and, when making a county survey, if the party for whom it is made does not furnish the chainman and markers, the surveyor is authorized to employ them "and receive the reasonable hire of all assistants necessarily employed." (Sec. 4843, Id.) The construction of section 4604, asked by defendant, would bar a county surveyor from presenting to the county a claim for any of the amounts expended under authority of these statutory provisions.

The demurrer to the first cause of action was properly overruled, and the judgment against the county is therefore affirmed.

2. Under the familiar rule that a demurrer admits the truth of all facts properly pleaded, the defendant has admitted that plaintiff performed 1,396½ days' service for

the defendant, for which he was entitled to receive compensation at the rate of $8 per day, but that, through the "mutual mistake, error and inadvertence" of plaintiff and the board of county commissioners, his claims were presented and allowed at the rate of $7 per day, and the county therefore has in its possession $1,396.50 which should have been paid to plaintiff; that he has presented to the county a proper claim therefor, which claim has been disallowed.

The county attorney contends that an officer is presumed to know what the salary for the office he holds, as fixed by law, is, and that, even if this presumption is not conclusive, where, as here, the law fixing the compensation is virtually at the finger tips of the officer, he should not be absolved from knowing what the law declares on the subject.

When the law fixes a stated salary in clear and understandable language, the officer should make no mistake as to the amount, but there certainly is no *conclusive* presumption in this state that an officer has such knowledge. (Sec. 10605, Rev. Codes 1921.)

The contention here made was presented in *Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315, and was disposed of by Mr. Justice Sanner in the following language: "Means of knowledge, generally speaking, do not affect the fact that a mistake was made, but only the availability of it as a basis for relief. If a logical exception be claimed to exist where the means of knowledge are inherent in the subject matter itself, such exception can be applied here only by virtue of the supposed presumption that the law is known to all. There is a rule that ignorance of the law does not excuse, but we know of no presumption imputing accurate legal knowledge to the world at large. The necessary result of such a postulate would be that a mistake of law can never occur because, accurate knowledge being in every instance present in the mind which entertains the wrong notion, to entertain such notion is no mistake, but deliberate choice."

But, if it may be said that mistake as a basis of relief should not be available to an officer whose salary is fixed by law, and therefore "virtually at his finger tips," the answer here is that a careful examination of the Code provisions on the subject discloses that neither the county surveyor nor any member of the board of commissioners had the law providing what shall be the compensation of such an officer "virtually at his finger tips." A person desiring to post himself on the subject would naturally first investigate the title "Surveyor." The only reference he would find in the index to our Codes is, "See Counties, 4835–4847." These sections prescribe the qualifications and duties of the county surveyor, the latter including the making of all surveys, establishment of grades, preparing plans, specifications and estimates (presumably in connection with the laying out and opening of roads, although not so stated), reporting delinquencies of road workers and progress on work, making surveys required by order of court or upon application of any person, keeping a record of surveys and plats in his office, and, at the direction of the board of county commissioners, directing and inspecting the work of road supervisors, furnishing plans and specifications for road or bridge work, and that he shall be chairman of all boards of road viewers. However, nowhere in the chapter, thus given in the index as containing all of the provisions referring to county surveyors, is there any reference to compensation.

The investigator would next turn, naturally, to the chapter on "Salaries and Fees of County Officers" (Chapter 35, pt. 4 [Pol. Code] Rev. Codes 1921), wherein the only reference to this officer is found in section 4921, which allows him to collect for his own use certain fees for work done for others than the county, and provides that for making a survey required by order of the court, or upon the application of any person, he shall receive $7 per day, and, if the survey is made for the county by order of the board of county commissioners, the per diem shall be paid by the county. Manifestly this provision

refers to surveys other than those made in laying out roads, and does not fix the compensation for the performance of duties not discharged by making a survey. As to all such duties, the investigator would have to look further, and, in doing so, he would find that, although the surveyor is to be "chairman of all boards of road viewers," there is no provision in the Codes for the appointment of such boards.

As the bulk of the surveyor's work for the county is done in connection with the establishment and opening of highways, the investigator would next, naturally, turn to the chapter on that subject (Chap. 127, pt. 3 [Pol. Code], Rev. Codes 1921), wherein he would find that section 1639 provides for the opening and survey of a proposed highway and declares that the board "may order the county surveyor, * * * to survey the same and plat it * * * for which the surveyor shall receive seven dollars per day and actual traveling expenses."

If the work of a county surveyor for which he was preparing a claim against the county was done only in connection with the laying out of a highway, he would probably look no further, but would file his claim for $7 per day, and this would also be his conclusion as to his per diem for any other survey made by order of the board, or for directing and inspecting the work of road supervisors and furnishing plans and specifications, at the direction of the board, in compliance with the provisions of sections 4921 and 1639, above.

The provisions of section 1639 above, are practically the same as those of section 7, Chapter IV of the Highway Act of 1915 (Chap. 141, Laws of 1915), and in that Act, under the heading "Road Districts and Duties of Officers" (Chap. III), we find provisions for direction by the board of commissioners to the surveyor or the surveyor and a member or members of the board to inspect any contract construction work on any highway or bridge in the county, and for this service the per diem provided is $7 per day, but the provision goes further by declaring that the surveyor shall also receive this compensation "for all other work performed for the county under the direc-

tion of the board of county commissioners." (Secs. 12 and 13.) This provision was carried forward into the "General Highway Law" of 1917 (Chap. 172, sec. 12, Laws of 1917), and was amended by Chapter 15, Extraordinary Session Laws of 1919, by raising this per diem of the surveyor to $8; this section now appears as section 1632, Revised Codes of 1921, but no change was made at that, or any other time, in the per diem fixed in the section now appearing in section 1639, Revised Codes 1921, above.

Inasmuch as the provisions of section 1632 make the addition quoted above, it may be said that the Act of 1919 impliedly amends all provisions of the Code on the subject of work done by a county surveyor "under the direction of the board," but the layman cannot be charged with construing an Act to repeal or amend a statute by implication; and, further, as section 1632 is entitled, "Inspection of Construction Work—Compensation," the laymen, the surveyor and the members of the board of county commissioners may reasonably have supposed that the compensation provided for in that section applied only to services performed by "inspection."

There is, therefore, ample justification in the law for laymen to fall into "mutual mistake, error and inadvertence" in determining the per diem of the surveyor, except as to services performed as an inspector of "construction work." There is nothing in the complaint to indicate the exact nature of the services performed by the plaintiff, and, by the demurrer, it is admitted that they were such as to entitle plaintiff to the compensation provided for in section 1632—that is, services performed at the direction of the board, and that the board, as well as the surveyor, made a mistake in this respect.

Chapter 8, Part V (Civ. Code) Revised Codes of 1921, deals with "consent" as an element of contract, and among other requirements, declares that the consent of the parties must be "free" (sec. 7473); it being not free if obtained through mistake (sec. 7475), which may be either of fact or law (sec. 7484). "Mistake of law constitutes a mistake, within the

meaning of this chapter, only when it arises from: 1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law.'' (Sec. 7486.) The allegations of the complaint bring this case squarely within these provisions, which warrant a rescission of the contract for mutual mistake and should justify recovery herein, unless the acceptance of the amounts allowed constitute accord and satisfaction, or estop plaintiff from asserting his right to the balance of his compensation, or he is, in some manner, barred from maintaining the action.

Counsel for plaintiff contends that the question of estoppel is not here presented, as it can only be raised by answer. This is the general rule (*Stafford* v. *Hornbuckle,* 3 Mont. 485; *O'Meara* v. *McDermott,* 40 Mont. 38, 104 Pac. 1049) ; but this case comes within an exception to the rule, to wit, that, where the facts said to constitute an estoppel are disclosed in the complaint, advantage thereof may be taken by demurrer (*Shipler* v. *Potomac Copper Co.,* 69 Mont. 86, 220 Pac. 1097).

Counsel for defendant cites authorities to the effect that, when a claim is presented to the board of county commissioners and allowed in part and disallowed as to the balance, acceptance of the allowance estops the claimant from thereafter recovering the balance, but these authorities are not in point here. These parties were mutually mistaken as to the amount of plaintiff's compensation; the claims for compensation were all allowed as presented; there was no allowance of a part of the claim or demand and rejection of the balance and no election by plaintiff to take less than he thought was his due at the time. As plaintiff's compensation was fixed by statute, it could only be changed in like manner, and the acceptance of less than the amount due on liquidated demands, under the circumstances, does not constitute an accord and satisfaction, nor estop plaintiff from claiming the balance due; nor does it constitute a splitting of causes of action. (Mechem, Public Officers, sec. 377; *Santa Cruz County* v. *McKnight,* 20 Ariz.

103, 177 Pac. 256; *Wolf* v. *Humboldt County*, 36 Nev. 26, 45 L. R. A. (n. s.) 762, 131 Pac. 964; *Kehn* v. *State of New York*, 93 N. Y. 291; *People ex rel. Satterlee* v. *Board of Police*, 75 N. Y. 38, *Bodenhofer* v. *Hogan*, 142 Idaho, 321, 19 Ann. Cas. 1073, 134 Am. St. Rep. 418, 120 N. W. 659; *People ex rel. Miller* v. *Board of Auditors*, 41 Mich. 4, 2 N. W. 180; *Adams* v. *United States*, 20 Ct. Cl. 115; *Whiting* v. *United States*, 35 Ct. Cl. 291.) While certain of the cases cited above were decided under statutes which we do not have, the fundamental principles underlying all of the decisions are the same.

Mr. Mechem, in his work above cited, says: "It is held that ██ a contract to accept less than the compensation prescribed by law is opposed to public policy and void. 'If by contract,' says the supreme court of Iowa, 'he may take less, why may not the parties contract for an enlarged compensation?'"

In *Boyle* v. *Ogden City*, 24 Utah, 443, 68 Pac. 153, this principle is recognized, but the court nevertheless held the plaintiff estopped by the facts shown. Therein it appears that, while a candidate for mayor, plaintiff pledged himself to economy, stating that he would be willing to have the salary of mayor cut in half; after his election an ordinance was passed so reducing the salary, which ordinance was approved by the mayor, and thereafter he accepted warrants for two years at the reduced compensation. On retirement from office, the mayor evidently had a change of heart and sued for the difference. This is a very different case from that here presented; morally, at least, the Utah court was right, as it compelled the mayor to keep his campaign promise and his subsequent agreement, with knowledge of all of the facts, to accept the reduced salary; here the plaintiff accepted the lesser compensation only because of the justifiable mutual mistake of the parties as to the compensation fixed by law.

Whether or not any part of plaintiff's claim is barred by ██ the statutes of limitation we need not determine, as such a bar can only be raised by answer; such a statute does not destroy the right, but merely bars the remedy, if asserted, and

it may be waived by failure to plead it in the manner prescribed. (*State ex rel. Kolbow* v. *District Court*, 38 Mont. 415, 100 Pac. 207; *Parchen* v. *Chessman*, 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631.)

The allegations as to the second cause of action are sufficient to entitle plaintiff to relief, and the court therefore erred in sustaining the demurrer thereto.

The second judgment is reversed, and the cause remanded to the district court of Stillwater county, with direction to overrule the demurrer.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD and HON. W. H. POORMAN, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, concur.