FIRST NATIONAL BANK OF NASHUA, APPELLANT, *v.* VALLEY COUNTY ET AL., RESPONDENTS.

(No. 8,126.)

(Submitted January 10, 1941. Decided April 22, 1941.)

[113 Pac. (2d) 783.]

*Mr. C. H. Roberts* and *Mr. John M. Kline,* for Appellant, submitted an original and a supplemental brief; *Mr. Kline* argued the cause orally.

*Mr. C. D. Borton, Mr. Thomas R. Marron* and *Messrs. Booth & Booth,* for Respondents, submitted an original and a supplemental brief; *Mr. Marron* and *Mr. Edwin Booth, Jr.,* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to have determined its legal rights against defendant county arising out of the following facts:

In 1934 the secretary of the Valley County Fair Commission submitted an estimate of the budget requirements for a county fair for that year, and the county commissioners made an appropriation for the purpose in the total sum of $3,600. To meet the appropriation the board of county commissioners

levied a ·tax which would produce an estimated $2,500, there being $1,117.15 on hand. The fair commission had in previous years expended the receipts from the fair without their inclusion in the budget and believed they could do so for the year 1934. The receipts from the fair totaled $2,624.18, $1,814 of which was expended in connection with pari-mutuel races. The commission for the year 1934 had expended a total of $6,139.21 for all purposes up to September 29, 1934, which was $2,539.21 more than the appropriation of $3,600 and $1,084.97 less than the appropriation plus receipts from the fair.

The commission issued orders for premiums and other legitimate fair expenses which were presented for payment when no funds were available with which to pay them. It is alleged, and the court found, that plaintiff at the request of the commission then advanced $756.56 which amount was deposited in the county treasury to take up the orders. On September 29 the commission gave plaintiff two orders on the county treasurer, Nos. 653 and 654, for $456.56 and $300, respectively. The orders were presented for payment on the same day and registered. Order No. 653, for $456.56, was subsequently paid. Order No. 654 is unpaid and furnishes the basis for this action. It was signed by one of the members of the commission in the absence of the secretary. Order No. 654 was presented when there was sufficient money in the fair fund to pay it, but payment was refused. The balance in the fund amounting to $2,536.30 was transferred to the poor fund at a time when plaintiff's order was the first in time of registration. The dealings with the bank were with its cashier who was also a member of the fair commission.

Nonliability on the part of the county is claimed because the order was void in that, first, it was not properly executed, and, second, because in excess of the appropriation.

The cause was tried to the court, the Honorable Jeremiah J. Lynch presiding, without a jury. The court found that plaintiff was not entitled to recover on any theory, and plaintiff appealed. The court found that the orders which were paid with moneys borrowed from plaintiff, and for which the $300 order

was issued, were not obligations of the county since they were in excess of the budget and the appropriation.

Plaintiff contends that the court misapplied the Budget Act, section 4613.1 et seq., Revised Codes. It contends that the Budget Act has application only to funds raised by taxation, and that an appropriation made under that Act should be construed as limiting expenditures to the amounts appropriated from revenues derived from taxation only, and not as any restriction upon the right of the commission to expend receipts derived from conducting the fair.

In the view we take of the case, it is unnecessary to determine whether the orders issued by the fair commission, and which were paid with moneys borrowed from plaintiff, were valid. If they were valid, then plaintiff certainly is entitled to recover the money lent by it to pay those orders. The same result must follow even though they were invalid. The evidence shows that the orders had been paid by the county from revenues on hand in funds other than the Fair Fund, and the money borrowed from plaintiff was used to replace such funds of the county. This being so, plaintiff contends that the $300 borrowed from it was received for the use and benefit of the county, and that in good conscience the county ought to be required to return it to plaintiff.

If the county was enriched by the transaction, then plaintiff's contention is correct. In other words, if the county got the use and benefit of the money borrowed from the plaintiff, then the cases hold that plaintiff is entitled to recover the money from the county, this even though the money was expended for an illegal purpose. The principle was applied in the case of *Morse* v. *Board of Commrs. of Granite County,* 19 Mont. 450, 48 Pac. 745, 746. One Cain, a member of the board of county commissioners, sold certain material to the county. When his claim was presented for allowance it was contested, and the district court held the claim invalid under the statute prohibiting a member of the county board being interested in any such transaction with the county. Cain sold the material to Morse (the material having remained in the possession of the

county in the meantime), who presented his claim to the county for the cost price. That claim was likewise contested and was declared invalid. On appeal to this court the lower court was reversed, not on the theory that the sale was legal under the statute, but that the county could not retain property and refuse to pay for it. The court said: "Let us inquire what was the effect of the judgment of the district court in holding and adjudicating Cain's claims against the county for this property 'illegal and void.' Counsel for respondent say that, by such adjudication, the property became the property of the county, and that thereafter Cain had no authority to sell it to Morse or any one else. The district court held the contract of sale of the property between Cain and the county to be void, because prohibited by statute. This left the title to the property still in Cain. The court did not and could not, by such adjudication, confiscate Cain's property. If, after such adjudication by the district court, the county kept possession of the property, and appropriated it to its use, it could not avoid paying the reasonable value thereof, because the contract by which it obtained it was *ultra vires,* illegal, and void. This question is fully discussed by this court in *State* [*ex rel., etc.*] v. *Dickerman,* 16 Mont. 278, 40 Pac. 698."

The *Morse Case* was cited with approval in *Hicks* v. *Stillwater County,* 84 Mont. 38, 274 Pac. 296, and has been referred to in other decisions of this court with obvious approval. The principles involved are fully and clearly expressed in decisions of other jurisdictions. (See annotation in 7 A. L. R. at page 353, and annotation beginning at page 444 of 93 A. L. R.) Leading cases are *Parkersburg* v. *Brown,* 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238, and *First National Bank* v. *Goodhue,* 120 Minn. 362, 139 N. W. 599, 43 L. R. A. (n. s.) 84.

The county contends, however, that there is no basis in fact or law for the claim that it actually received the plaintiff's money and put it in the county funds. Just what took place according to the evidence is the following:

The then county treasurer received a number of orders or warrants issued by the county fair board at a time when there

was no money in the Fair fund with which to pay them. He paid the warrants from cash in the cash drawer representing county funds other than fair funds. He placed the orders or warrants in the cash drawer in place of the money. The board then borrowed the money from the plaintiff which was paid by the Fair Board to the county treasurer and which went into the cash drawer to take the place of the county funds which had been paid out on the warrants. While the Fair Board ▉ has authority to ''do all things necessary to hold a successful county agricultural fair'' (sec. 4546, Rev. Codes), we find it has no authority to borrow money for that purpose. On the other hand, if it actually does borrow money and the county obtains the use and benefit thereof, the county cannot in equity and good conscience retain it.

Had the plaintiff not advanced the money to the Fair Board, ▉ either the fund out of which the warrants had been paid would have remained short the $300, or the county might have sought redress from the then county treasurer or the sureties on his bond for paying out the funds illegally. If the first of these alternatives had remained, then there would have been just $300 less to be used for general county purposes. If the county availed itself of the right to sue the treasurer and the sureties on his bond, as it had the right to do, then the county would have been made whole without borrowing from plaintiff. In either event, the county actually received the use and benefit of the $300 borrowed from the plaintiff. The fact that plaintiff lent the $300 to the Fair Board would not prevent the county from suing the treasurer or the sureties on his bond for improperly paying out the money. This it could have done even if it was true that plaintiff did lend the money for the purpose of replacing county funds improperly paid out on the warrants or orders on the assumption that they were illegal.

No matter how we view the transaction, we are driven to the conclusion that the county did actually receive the use and benefit of plaintiff's money, and this being so, under the above cited cases, the county in equity and good conscience should be required to repay it. It should be noted that the Fair Board,

in borrowing the money, purported to act in behalf of the county, and the bank, in lending the money, understood that it was to be used for the purpose for which it was applied. It did not purport to lend the money to make good any defalcation by a county officer.

The court erred in finding that the plaintiff was not entitled to recover on the theory of money had and received.

The judgment is reversed and the cause remanded with direction to enter judgment for plaintiff.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. JUSTICE MORRIS concurs in the result.

Rehearing denied June 11, 1941.