·BUILDERS SUPPLY CO., Respondent, *v.*
CITY OF HELENA, Appellant.
(No. 8460.)
(Submitted May 12, 1944. Decided October 19, 1944. Opinion on Petition for Rehearing filed December 14, 1944.)
[154 Pac. (2d) 270.]

*Mr. Lester H. Loble* and *Mr. Albert H. Angstman*, for Appellant, submitted a brief and argued the cause orally.

*Mr. Ralph J. Anderson, Mr. Myles J. Thomas* and *Mr. Lew L. Callaway*, for Respondent, submitted a brief; *Mr. Anderson* and *Mr. Thomas* argued the cause orally. *Mr. Edwin E. Multz*, appearing as *amicus curiae* in behalf of the Montana Municipal League.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant City of Helena appeals from a judgment for $5,-044.10 in plaintiff's favor upon the latter's suit for a balance of $6,271 claimed to be due and unpaid upon its purchase of water pipe and couplings but which the present mayor and

commissioners refuse to pay. There are 63 specifications of error, many of which relate to evidence admitted or rejected and instructions given or refused; but it will be necessary to consider only the specification that the court erred in entering judgment for plaintiff and against defendant.

The amended complaint alleged that between March 6, 1939, and January 15, 1940, plaintiff sold defendant 7,239 lineal feet of water pipe and 75 extra couplings at stated prices; that defendant paid in full for 3,366.5 feet of said pipe and 50 extra couplings, but refused to pay for 3,872.5 feet of pipe and 25 couplings of the reasonable value of $6,271; that defendant installed all of the pipe in the ground as part of its water system; that it is contrary to conscience and fair dealing for defendant to retain the same and refuse to pay for it; that on July 25, 1940, plaintiff demanded that defendant either return the said 3,872.5 linear feet of pipe and 25 couplings, or pay their reasonable value, $6,271; that the defendant refused to do either "although it had * * * the ability" so to do.

Except for the admission of certain formal matters and of its refusal to pay plaintiff the $6,271 demanded, defendant in its answer denied the allegations of the complaint and set up affirmative defenses to the effect that the transaction was fraudulent and in violation of the budget and bid laws; that the transaction exceeded $500 in amount, but that it was made to appear as a number of transactions for less than that amount in order to circumvent and evade the bid law, section 5070, Revised Codes, which provided that: "All contracts for work, or for supplies or material, for which must be paid a sum exceeding five hundred dollars * * * must be let to the lowest responsible bidder, under such regulations as the council may prescribe; * * *."

Upon plaintiff's motion all references to the violations of budget and bid laws were stricken; other affirmative allegations were denied by reply.

Also upon plaintiff's objections, all reference to budget and bid laws were stricken from defendant's requested instructions

and special interrogatories, the only questions submitted to the jury being six special interrogatories as to the value of the pipe, the sum of money which plaintiff was entitled to recover from defendant, and whether any fraud was practiced in the transactions. The jury found that the value was as claimed by plaintiff, except as to full lengths of pipe, which it reduced ten cents per foot. It found that there was no fraud and that plaintiff was entitled to recover $5,044.10 from defendant, without reference to interest.

Deeming this an equity case as contended by plaintiff, although defendant at all times argued that it was a law case, the court submitted only the above special interrogatories to the jury, and pursuant to the jury's findings, entered its own findings of fact that all the pipe in question was placed in and constitutes part of the defendant's water system, that 3,872.5 feet of pipe and 25 extra couplings and rings had not been paid for, that plaintiff had demanded the return thereof or the payment of $6,271 therefor, that the city had refused to comply with either demand, that the reasonable values and the total unpaid amount were as found by the jury, that the pipe was sold by plaintiff in good faith and without fraud, and that it was "contrary to conscience and fair dealing for the defendant to retain the said transit pipe, coupling and rings and refuse to pay for the same." Its conclusion of law was that plaintiff was entitled to judgment for $5,044.10 with interest from July 25, 1940, the date of demand for payment. Judgment was rendered accordingly.

The record shows that in 1937 the mayor and the city engineer decided that it was advisable to replace some 12,000 to 18,000 feet of the water pipe line to the Hale Reservoir. Without any official action by the city council and without obtaining bids from others, the mayor arranged with plaintiff to supply cement asbestos pipe for the entire project. The prices agreed upon between plaintiff and the mayor were those alleged in the complaint. Plaintiff's president testified that he named those prices because a price of $1.40 per foot was quoted

to him by Mr. Richardson, the manufacturer's Montana representative at Great Falls, for pipe in less than carload lots. Later, upon being informed that the prices were too high, the mayor made complaint to the plaintiff's president and was told that the price of the next carload would be reduced; but no reduction was ever made. It was understood between the mayor and the plaintiff that many thousand feet of pipe would be needed, and that it was to be available for the city's use as required, but that each claim presented should be for less than $500. The first car of pipe was shipped to plaintiff by the manufacturer on September 13, 1937, the second on November 17, 1937, the third on December 7, 1938, and the fourth on May 10, 1939.

The laying of the pipe was finally done as a WPA project, beginning in November, 1938, when the first pipe was taken by the city from plaintiff's yard. But plaintiff had already been paid $7,462.40 upon its claims covering the first two carloads of pipe, each payment being upon a claim for exactly $480 except the last claim prior to the commencement of work, which was for $262.40 and which completed payment for the second car. All pipe was called for and removed from plaintiff's yard by a city truck at various times and in varying amounts, but the same system of claims and payments continued throughout.

The total transaction involved 12,803 feet of pipe, the cost of which at the agreed prices was to be $20,920.40, and upon which the city made payments totalling $14,649.40, leaving the balance of $6,271 claimed by plaintiff.

Throughout the trial and at all times up to the filing of its petition for rehearing plaintiff strenuously contended that the transaction constituted separate purchases for less than $500 each and that section 5070 did not apply.

In plaintiff's evidence several inconsistent explanations were given for this peculiar way of handling the transaction as a series of separate purchases for less than $500 each. The former mayor, by whom the transaction was conducted, testified on behalf of the plaintiff. When asked if he was not aware that

bids were required for purchases in excess of $500, he replied that the law was not applicable because "we were buying in amounts less than $500.00."

One of the explanations offered was that it was feared that the WPA might discontinue the project without notice and leave the city with unneeded pipe on hand, but the former mayor testified that it was not intended to have the work done as a WPA project, that he ordered the pipe to give the regular city employees something to do and intended to have them lay it; that any fear of the WPA quitting the project did not figure in the transaction because it was intended to have the work done by the city employees anyway. Furthermore, the first two carloads were paid for before the WPA contract was made and the work commenced.

Another reason given was that the pipe was paid for as taken from the plaintiff's yard, but as stated above two carloads were paid for before any was taken. After the work began there seems to have been no adequate system used to check or report the amount of pipe hauled away and pipe was taken in odd amounts and at irregular intervals. The largest truckload ever taken was of twenty-two thirteen-foot lengths, or $457.60 worth at $1.60 per foot; all other loads were smaller, "probably ten lengths" or thereabouts, according to the former city engineer, which would be $208 worth at that price. But no claim was presented for such an amount; there were only two claims for smaller amounts than $480, one of which, for $262.40, was to complete collection for the second car before any pipe was taken away, and the other of which, for $425.60, bears a notation indicating that it was to complete collection for the third car. The claims continued to be presented in amounts of slightly under $500 each, ten of them for exactly $480, four of them for slightly more, and one for $425.60, as noted above. Thus the claims obviously bore no relation to the amounts of pipe taken away on any specific occasions or in any specific periods.

The most plausible reason offered was that the sum of $480 was the amount which the city was expected to be able to pay

each month out of water department income, according to the former mayor. However, during the first five months plaintiff presented ten claims for $480 each, all of which were paid in the first six months, thus disposing of that contention. Plaintiff's president testified, as a variation of this: "If receipts grew better, that is the bills were paid better, and they were able to collect in some delinquencies they had, perhaps they could pay more, though there might be times when they could not pay anything." If that, rather than the evasion of the statutory $500 limitation, had been the intention, it would seem that each month's claim should have been for the amount available for payment, whether more or less than $500.

But whatever the reason for the system employed, the fact remains that all parties concerned knew that it was intended to buy much more than $500 worth of pipe, and that competitive bids should therefore have been secured. In any event, and however payment was to have been made, there was no reason why competitive bids should not have been invited as required by the statute for the protection of the people. If, on any such pretext, nearly $21,000 worth of pipe for one project can thus be bought in many ostensibly separate purchases of less than $500 each, at the same time increasing the cost to a "less than carload" basis, which according to the testimony of plaintiff's president set the price in this instance, section 5070 becomes not only useless, but positively harmful. The necessary result of the means used was both to evade the statute and to increase the cost of the pipe.

There were at least two others who would have submitted lower bids for pipe, but who were given no opportunity to do so. One was an agent for cast iron pipe. The other was the Montana representative of the manufacturer of the pipe used, who testified that he would have quoted the city practically the same carload rates at which plaintiff purchased the pipe for resale to the city. There seems to have been no reason why the city could not have purchased the pipe in carload lots.

The evidence, including the testimony of the mayor and of

the plaintiff's president and general manager, was that it was well understood that the transaction was to supply pipe for the entire project, and that some thousands of feet of pipe would be used, thus eliminating any possible contention that these claims and payments constituted separate bona fide purchases. With reference to the first two cars of pipe, plaintiff's president testified that they were paid for in installments by the city because he went to the mayor, explained his financial stringency and asked "If he could advance me money on the stock I had in the yard, which I hoped they would be able to use." In other words, the fifteen claims for $480 each and the claim for $262.40 to complete collection for the first two cars were not claims for sixteen separate bona fide purchases, but constituted merely sixteen partial payments upon one transaction. That fact is not altered by the testimony that plaintiff would have refunded the money if part of the pipe had not been taken and used. Moreover, the mayor testified that the pipe was being bought for necessary replacements and would have been used in any event; so that there was no question of any repayment by plaintiff.

Throughout the trial and at all times until the filing of its brief on petition for rehearing after the original decision on appeal, plaintiff insisted that the transaction involved numerous bona fide purchases of less than $500 each and that section 5070, supra, did not apply. In its original brief on appeal plaintiff said:

"The trial court struck from the said answer the separate defenses setting up the violation of the municipal budget Act and of the bid law * * *.

"Neither the bid law nor the budget law are applicable under the evidence in this case. The testimony discloses that the plaintiff kept a supply of pipe on hand and that it was called for by the City or the WPA and there was only one truck doing the hauling and this was furnished by the City and that the largest load ever hauled was 22 lengths of 13-foot lengths and many of the loads were smaller than that. So we have in this case a series of transactions wherein the City purchased pipe from the

plaintiff and no purchase ever exceeded the sum of $500. There is no difference between this transaction and the one where the City would make several purchases in a month from, say, the Holter Hardware Company, of nails. If none of those purchases exceeded the sum of $500 then although the total amount owing to the Holter Hardware Company at the end of the month might exceed $500 the City could not refuse to pay on the grounds that the bid law and the budget law had not been followed.''

In plaintiff's brief on petition for rehearing it shifted position as follows:

''At the outset we desire to make our position clear. This case involves but one transaction, and not a series of transactions. We only advanced that originally as an additional argument, which we now concede is not sound. Our position is this:

''1. If 5070 R. C. M. 1921 applies, there could not be any kind of contract.

''2. If there was a contract, it had to be by reason of Chapter 115, Laws of 1937.

''3. If, as the Court found, Chapter 115, Laws of 1937 is not applicable, then and in that event the deal between the plaintiff and the City was void; title to the pipe could not pass to the City under such void arrangement, and consequently when the City refused to return the property to the plaintiff after demand made the City in effect stole and converted the plaintiff's property to its own use and then became liable under equitable rules, preventing unjust enrichment, to pay plaintiff the reasonable value of its property.''

The admission changes the case in several respects. Since only one transaction was involved, the trial court and jury should have considered the applicability of section 5070. The original contention was, not only that the transaction did not violate section 5070, but that if it did, it would be valid under Chapter 115, Laws of 1937, the WPA Compliance Act. But since now it is admitted that only one transaction was involved, and since the latter was instituted in 1937, when, according to the then

mayor, there was no intent to perform the work as a WPA project, it follows that Chapter 115, Laws of 1937, can have no possible application. Furthermore, since, there was only one transaction, involving the expenditure of $20,920.40, nearly three-fourths of which had been paid, the city should at least have been given credit for the ten cents per foot payment made for full lengths in excess of the fair price as found by the jury.

The admission removing all doubt that the transaction was in violation of section 5070 and was not authorized by Chapter 115, Laws of 1937, we need not consider the applicability of the budget law. When the statute does not otherwise provide, transactions contrary to its provisions are void and the courts will not lend their assistance to the parties, but will leave them where they have placed themselves unlawfully. (*Missoula St. R. Co.* v. *City of Missoula,* 47 Mont. 85, 130 Pac. 771; *Commonwealth Public Service Co.* v. *City of Deer Lodge,* 96 Mont. 48, 29 Pac. (2d) 667.)

Section 5070 (then sec. 3278, Rev. Codes, 1907) was under consideration in *Missoula Street Railway Co.* v. *City of Missoula,* supra. The decision in that case is directly controlling here. The only essential difference is that in that case the unlawful contract was for work, which obviously could not be returned, whereas here it was for pipe, which plaintiff knew was to be, and which was, installed and buried in the ground as part of defendant's water system, and which obviously cannot be dug up, detached and returned without great expense to defendant. Since the labor cost of installing the pipeline was some $23,-708.30, which exceeds the contract price of the pipe, it would seem that the expense of returning and replacing the portion in question would exceed its value. While the city would have no right to withhold the pipe if it were readily available for return, we have found no authority for directing its return at such loss to the city, and upon reason the case of *Missoula Street Railway Co.* v. *City of Missoula,* seems indistinguishable from this one.

In that case the court added, by way of *dictum* [47 Mont. 85, 130 Pac. 774] : "It may well be said that, in cases in which

the municipality has acquired property which is still in specie, it may not be allowed to retain it *and at the same time refuse to pay its reasonable value.* In such a case, however, its liability would rest upon different principles. The contract being void, the title to the property would not vest under it, and the seller would be in a position to reclaim it, *or, if restoration of it should be refused, to recover the reasonable value of it."*

All that the latter statement can mean is that if title has not passed, and if the property is still in such condition that it can be restored to plaintiff without loss to defendant, the latter has no right to withhold it from plaintiff. But even in that event, the court went too far in stating that if restoration were refused plaintiff might recover its reasonable value, where the statute forbids the acquisition of property without competitive bids. Clearly the remedy must in such case be limited to the actual recovery of the property itself, and the portion of the *dictum* shown above in italics must be disapproved.

The principle of recovery enunciated by the *dictum* is the common law theory of quasi contract, or relief against unjust enrichment. In 17 C. J. S., Contracts, section 6, p. 324, it is said:

"Contracts implied in law, or, as stated supra sec. 4, more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action *ex contractu.* * * * Such contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do." (See *Schaeffer* v. *Miller,* 41 Mont. 417, 109 Pac. 970, 137 Am. St. Rep. 746; *French* v. *Lewis & Clark County,* 87 Mont. 448, 288 Pac. 455.)

Ordinarily where property has been given to a person by mistake or where for some other reason the title has not passed to him the law supposes a promise to return it or pay for it. But the law cannot make such supposition where, as here, the prop-

erty cannot be returned without great loss, or where, as here, the statute forbids its acquisition except from the lowest bidder.

In its brief on petition for rehearing plaintiff admits that section 5070 forbids, not only a contract express or implied in fact, but also a quasi contract, one implied in law. For the law cannot imply what the law forbids. But plaintiff contends that the equitable principle against unjust enrichment which admittedly cannot afford the usual common law remedy of quasi contract, should nevertheless afford an equitable remedy. The same contention was made in *Missoula Street Railway Co.* v. *City of Missoula, supra,* and the court said, with reference to plaintiff's counsel: "They insist that, notwithstanding the contracts in question are void, the plaintiff upon equitable grounds ought to be permitted to recover the reasonable value of such benefits as have been received by the defendant. As already observed, the complaint declares upon the contracts according to their express terms. It is therefore doubtful whether its allegations are sufficient to support a judgment for the reasonable value of the work done. But, assuming that they are sufficient, still we do not think the plaintiff entitled to recover. The result of such a holding would establish a rule which would abolish completely all limitation upon the power of the council to bind the city, and thus defeat the very purpose had in view by the legislature in enacting the statute, viz., to promote economy and to protect the taxpayers from fraud and favoritism on the part of the council or the officers of the city. The equitable doctrine of estoppel can have no application to such a case. In entering into the contracts, the plaintiff was dealing with an artificial person, a creature of the law, whose authority to contract is conferred and limited by law. The facts were all known to it. There was no misrepresentation made to it. It knew the extent of the power of the council and how it must be exercised. It dealt with the council at its own peril. (Citing cases.) If, when it began to work, the contracts were illegal, it knew it. It did the work with full knowledge of this fact. It was therefore not misled, and is not now in a position to allege that the de-

fendant is estopped to question its own liability." What was there said is fully applicable here. The court cannot afford such remedy where the result would be to defeat the purpose of the legislature, the protection of the public. Neither law nor equity can justify such result. It is immaterial whether, as respondent contends, the jury's finding is conclusive that there was no fraud; for the statute makes the transaction void without reference to fraud.

Plaintiff contends that this result is contrary to *State ex rel. Northwestern Nat. Bank* v. *Dickerman,* 16 Mont. 278, 40 Pac. 698; *Morse* v. *Board of Commissioners of Granite County,* 19 Mont. 450, 48 Pac. 745; *Hicks* v. *Stillwater County,* 84 Mont. 38, 274 Pac. 296; *First Nat. Bank of Nashua* v. *Valley County,* 112 Mont. 18, 113 Pac. (2d) 783; and *Grady* v. *City of Livingston,* 115 Mont. 47, 141 Pac. (2d) 346. But none of those cases overruled *Missoula Street Railway Co.* v. *City of Missoula,* or *Commonwealth Public Service Co.* v. *City of Deer Lodge,* supra; none of them involved section 5070, and none of them is in any way similar to this case on the facts. In none of them was the plaintiff attempting to recover against the defendant by reason of a contract made void by law and to which he was a party. In *Grady* v. *City of Livingston,* supra, the statute in question made the contract voidable rather than void, and a taxpayer sued unsuccessfully to recover what had been paid by the city on the voidable contract.

In *State ex rel. Northwestern Nat. Bank* v. *Dickerman,* supra, the plaintiff was suing for money advanced to a school district for construction of a school building pending determination of the validity of a bond issue later held invalid and replaced by a new bond issue. The court pointed out that it was not a case of direct violation of law by the parties, saying [16 Mont. 278, 40 Pac. 701] : "The most, we think, that can be said in this case, is that there was an imperfect or defective attempt to comply with the law on the part of the trustees in the issuing of the bonds of the district. They had the authority under the law to issue them for the purpose for which they were issued, but

failed to give a sufficient notice of the purpose and conditions thereof in providing for the election to authorize their issuance. Nor is any bad faith or fraud alleged in the issuance of said bonds. If the bonds had been declared void, we think it could hardly be contended that the contract with relator to advance money on them as security, for the building of the schoolhouse, would have been considered void for want of authority in the trustees to make the same. * * * The school district secured the benefit of relator's money advanced in good faith; and we think it would be a most inequitable and unjust holding to say that the district assumed no liability on account thereof, and that relator is left without a remedy, under the circumstances of this case.''

In *First Nat. Bank of Nashua* v. *Valley County,* likewise, plaintiff sued for money advanced to the county. The county fair board had issued warrants in excess of its authority under the budget law, the county treasurer had paid them out of other county funds, and the money had been borrowed from plaintiff and used to replace such funds. The plaintiff was not a party to the issuance of the alleged unlawful warrants or to the alleged illegal expenditure of the borrowed money. Under those circumstances this court held that it was not necessary to determine whether the fair board's issuance of warrants or the county treasurer's use of the borrowed funds was lawful, saying [112 Mont. 18, 113 Pac. (2d) 784] : ''If the county was enriched by the transaction, then plaintiff's contention is correct. In other words, if the county got the use and benefit of the money borrowed from the plaintiff, then the cases hold that plaintiff is entitled to recover the money from the county, this even though the money was expended for an illegal purpose.'' Obviously the latter two cases, involving money advanced, furnish no authority for plaintiff's contention here, where it is a party to the unlawful contract of sale of property.

In *Morse* v. *Granite County,* supra, it was held that where a county commissioner's sale of property to the county was void under Compiled Statutes 1887, Fifth Division, sec. 1110, and

Morse thereafter, in good faith and for a valuable consideration, acquired title to the property from the commissioner, and the county retained and used the property, Morse was entitled to collect the reasonable value thereof. The case would be roughly analogous to the present one if it had been the county commissioner who was suing on quasi contract; since the statute would have prevented the quasi contract, as plaintiff admits that section 5070 does in this case, the court could have found him entitled to recover the property, but would have been required to deny him the recovery of its money value instead. But the statute was not applicable to Morse; he was not a party to the forbidden transaction between the commissioner and the county. Here it is a party to the forbidden transaction who seeks the aid of the courts.

In *Hicks* v. *Stillwater County*, supra, plaintiff was county surveyor and sued the county for $175 as the reasonable rental value of a transit alleging, among other things, that it was necessary in the performance of his duties, that defendant failed to provide him with it, that he therefore procured and used one, which fact was known to and acquiesced in by the county and its board of county commissioners. This court agreed with the contention that the county surveyor had no authority to bind the county by contract, but said [84 Mont. 38, 274 Pac. 298] :

"Nevertheless, the law requires a county to furnish its county surveyor with 'necessary equipment, to perform his various duties as prescribed by law' (section 4838, Rev. Codes 1921), and this duty is to be discharged by the board of county commissioners. The complaint alleges that a transit was necessary for this purpose, and this is undoubtedly true, as the surveyor is required by section 4836 above to 'make all surveys, establish all grades,' etc., on county projects. The members of the board of county commissioners would not be presumed to have the technical knowledge necessary for the proper selection of a transit, and might reasonably leave the selection to the surveyor; nor is there anything in the law prohibiting the rental, rather than the purchase, of equipment which the county is required to

furnish, or prohibiting an agreement in advance that the surveyor should 'procure and use' necessary equipment for the benefit of the county, rather than putting the county to the expense of purchasing such equipment. Such an arrangement would imply a promise on the part of the county to pay the reasonable value of the use of the equipment. * * *

"It may be reasonably assumed from the allegations of the complaint that, on taking office, plaintiff, with the knowledge and acquiescence of the board of county commissioners, and in order to relieve the county of the expense of purchasing for him a transit, used an instrument which he then had, or purchased and used such an instrument, throughout his four years of service. The use of the instrument, the wear and tear thereon, is 'property,' and in such a situation the defendant knowingly took and consumed property of the plaintiff, for which it should, in justice and under the above rules, pay the reasonable value, which is alleged and admitted to be the sum of $175.''

The basis for the court's decision in that case appears in its quotation from 3 McQuillin on Municipal Corporations, sec. 1364, as follows: "It is well settled that, in a proper case, a municipal corporation may be liable on an implied, as distinguished from an express, contract, although mere benefits received * * * will not ordinarily create an implied promise to pay. Thus if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an implied contract where it has received benefits, either in the entire absence of any contract or where an express contract is invalid because of mere irregularities.''

Certainly that case, upholding liability where "there are no statutory or charter provisions limiting the mode of execution of a like express contract * * * or where an express contract is invalid because of mere irregularities,'' can afford no precedent for liability here, where there is an express statute making the contract void.

Even if the plaintiff, by reason of its complicity in the prohibited transaction, were not barred from asserting estoppel or unjust enrichment, the measure of the enrichment could not approximate the amounts sued for or awarded by the judgment. Plaintiff stated in its brief on appeal that it paid $15,-453.23 for the pipe, that the city repaid only $14,649.40, which was $803.83 less than the plaintiff had actually paid out. As noted above, the city could have purchased the pipe through the manufacturer's representative for substantially the same price as plaintiff, and its officers should have seen to it that the city had the benefit of that price. Section 5070 is intended to prevent just such transactions as this, in order to prevent unjust enrichment of others at the expense of the city. Since by complying with statute the city itself could have purchased the pipe for $15,453.23, that would seem to be its real value to the city. Thus $803.83, rather than the $6,271 sued for or the $5,044.10 awarded by the judgment would seem to be the measure of the city's enrichment at plaintiff's expense. If the city had on hand, unused, $803.83 worth of this pipe at the rate charged it by plaintiff, there would seem to be no reason why it should withhold the same from plaintiff. But the pipe is buried in the ground and constitutes part of defendant's water system. It is true that plaintiff must have had some slight expense incident to unloading the pipe, but the city could have had that work performed by its regular employees, to supply work for whom, according to the former mayor, the pipe was bought. Plaintiff presumably had some expense also, incident to financing; but the amount was not shown and would seem to be offset by the city's payment for the first two shipments of pipe at the noncompetitive price, before delivery was taken or use made of any part of it. Plaintiff even contends that it is entitled to an actual profit upon the transaction, but we can find no authority to that effect.

The judgment appealed from is reversed and the cause remanded with directions to the district court to enter judgment for the defendant.

386

Mr. Justice Erickson and Honorable David N. Nyquist, District Judge, sitting in place of Mr. Justice Adair, disqualified, concur.

Mr. Justice Morris concurs in the result.

Mr. Justice Anderson dissents.

Rehearing denied December 14, 1944.